In re Peter LARSEN, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 89–1424.

District of Columbia Court of Appeals.

Submitted Feb. 21, 1991.
Decided April 12, 1991.

Before FERREN and WAGNER, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM:

This matter comes to us from the Board on Professional Responsibility ("the Board") as a reciprocal discipline case that arose because the Court of Appeals of Maryland disciplined respondent for misappropriation of client funds.[1] We accept the Board's recommendation and impose the discipline recommended by the Board.

In reciprocal discipline cases, this court imposes an "identical discipline" unless we determine "[t]he misconduct established warrants substantially different discipline in the District of Columbia." D.C.Bar R. XI, § 11(f). The Court of Appeals of Maryland suspended respondent indefinitely but without prejudice to apply immediately for reinstatement and subject to certain conditions. In this jurisdiction misappropriation of funds warrants disbarment in virtually all cases. *In re Addams*, 579 A.2d 190, 191 (D.C.1990) (en banc). Therefore, the misconduct established in this case warrants substantially different discipline from that imposed by Maryland. Accordingly, we turn to the Board's recommended discipline.[2]

The Board recommends this court disbar respondent, but stay the disbarment and impose a period of conditional probation for three years. The Board's recommendation is based on the findings of the Maryland court and our existing case law dealing with analogous circumstances. The Maryland court found that respondent's misconduct resulted from a mental illness, a bipolar or manic depressive disorder, and that with continued treatment and support respondent could practice law responsibly and professionally. As the Board points

1. Respondent Larsen filed no opposition in this court to the Board's report.

2. In its report, the Board concluded this court could issue an appropriate order based on the conclusiveness of the record of the Maryland proceedings and therefore a *de novo* proceeding was unnecessary. We agree. *See In re Reid*, 540 A.2d 754, 757 (D.C.1988).

out, this court previously considered alcoholism, *In re Reid*, 540 A.2d 754, 759–60 (D.C.1988), *In re Kersey*, 520 A.2d 321, 326–28 (D.C.1987), and chronic depression, *In re Peek*, 565 A.2d 627, 634 (D.C.1989), to be mitigating factors justifying a sanction of supervised probation. The Board reasons that in this case respondent's mental illness should similarly be considered a mitigating factor justifying a sanction of supervised probation. We are persuaded by the Board's reasoning and, accordingly, we adopt the Board's recommended sanction as specified by the Board in its report, which we append as part of this opinion.

*So ordered.*

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD OF PROFESSIONAL RESPONSIBILITY

Bar Docket No. 445–89

(DCCA No. 89–1424)

IN THE MATTER OF: PETER LARSEN, RESPONDENT.

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

On November 28, 1989, the Court of Appeals of Maryland filed an opinion and order suspending Respondent, Peter Larsen, from the practice of law in that state. The basis for the suspension was a determination that Respondent had engaged in numerous disciplinary code violations in 1986 in his handling of funds received in connection with a client's personal injury claim. Under the Maryland order, Respondent was allowed to apply for reinstatement any time after ninety days if he agreed to comply with specified conditions, including subjecting his practice to outside monitoring for a two year period.

Based on this action in Maryland, the District of Columbia Court of Appeals, on January 18, 1990, suspended Respondent from the practice of law in this jurisdiction until disposition of reciprocal disciplinary proceedings here. However, on April 13, 1990, after receiving notice that Respondent had been permitted to resume practice of law in Maryland on January 23, 1990,

the District of Columbia Court of Appeals vacated the suspension. Thus, at the present time, Respondent can practice law in Maryland (under the conditions imposed by the Maryland Court of Appeals) but is presumably under no restraint concerning practice in the District of Columbia.

In the Court's order of January 18, 1990, the Board was directed to recommend whether reciprocal discipline should be imposed and, if not, whether other action should be taken. Despite the Court's later order vacating Respondent's suspension, the Board is still required to comply with this direction. Therefore, we have considered the question of reciprocal discipline. We conclude that the misconduct upon which the Maryland discipline was predicated "warrants substantially different discipline in this jurisdiction," and recommend, therefore, that reciprocal discipline not be imposed.

With respect to the discipline that should be imposed, we have concluded that a *de novo* hearing is not required here in light of the conclusive nature of the factual findings made in Maryland. We recommend that the Court disbar Respondent in the District of Columbia, but that it immediately stay the disbarment and place Respondent on probation for three years on terms and conditions we specify on pages 13 and 14 of this Report.

### The Maryland Proceedings

The Maryland proceedings began when a physician, Indira V. Gokulanathan, M.D., filed a complaint with the Maryland Bar authorities that Respondent had failed to pay charges for medical treatment afforded to the family of Deborah Glass, a personal injury client of Respondent. The Maryland Attorney Grievance Commission investigated the complaint and concluded that there was basis to believe that Respondent had, in fact, mishandled funds he had received in settlement of his client's claims. The Commission filed a petition for disciplinary action against Respondent alleging numerous code violations.

The matter was assigned to a Circuit Court Judge, who conducted an evidentiary

hearing on the charges and filed extensive findings of fact and conclusions of law. The findings relied heavily on admissions of fact by Respondent and on other uncontested evidence, including Respondent's own testimony.

At the conclusion of the evidentiary proceedings, the Circuit Court Judge concluded that Respondent had violated numerous disciplinary rules, including DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 2–110(B)(3) (failing to withdraw from employment when mental or physical condition renders it unreasonably difficult to carry out employment efficiently); DR 6–101 (handling a legal matter without adequate preparation); and DR 9–102[1] (preserving identity of funds or property). In addition, because the Rules of Professional Conduct became effective in Maryland after January 1, 1987, the Court also found violations of several of those provisions, including Rule 8.4 (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 1.15(B) (failing promptly to deliver funds to client or the third person).

The findings and conclusions by the Maryland trial judge were adopted by the Maryland Court of Appeals. Although the Maryland high court did not precisely identify the specific factual basis for each particular code violation that was found, the undisputed fact findings clearly supported the conclusion that Respondent had intentionally misappropriated funds and engaged in other violations. The uncontroverted evidence showed that Respondent had executed an authorization agreeing to withhold sums received in settlement of his client's claims to pay the complaining physician's bills; in November, 1986, he collected a check from an insurance company in the amount of $2,050 to reimburse the physician's medical charges; he deposited those funds into his escrow account; and, instead of paying the money to the physician, Respondent used the funds for his own purposes. *See* Maryland Findings, Nos. 2, 14–19, 27, 28.

These actions constitute a disbarment offense in the District of Columbia. *In re Buckley*, 535 A.2d 863 (D.C.1989). Indeed, under District of Columbia law, the fact that the balance of Respondent's escrow account went below the amount that was owed may itself be enough to warrant disbarment. *In re Addams*, 579 A.2d 190 (D.C.1990) (*en banc*).

In the Maryland proceedings, Respondent contended that, at the time of the events in question, he suffered from "bipolar illness" that affected his professional conduct. To support this claim, there was psychiatric testimony, such as that from Ellen G. McDaniel, M.D., Maryland Bar Counsel's expert, to the effect that:

> ... with a reasonable degree of medical certainty ... Respondent was suffering from a mental disorder at the time of the incident which precipitated the complaint to the Attorney Grievance Commission and that particular mental disorder is a bipolar disorder which used to be referred to as manic depressive disorder. [Maryland Opinion, p. 17.]

Aside from evidence as to the causal connection between the illness and the misconduct, there was also evidence that Respondent was being treated for his bipolar illness and was responding adequately. Respondent's treating psychiatrist, Edger J. Weiss, M.D., testified that, with medication, Respondent "could in the future carry on the duties of an attorney requiring [*sic*] the responsibility to clients and to the bar and the bench, with regard to honesty, integrity and mental ability to perform, so long as he maintained contact with a treating psychiatrist." Maryland Opinion, p. 19. This was consistent with the views of Maryland Bar Counsel's expert, who agreed that, if Respondent remained on medication and was closely monitored, his bipolar illness could be controlled to the degree that it would not interfere with his law practice. But Dr. McDaniel saw the need for "a carefully chosen support system" because of concern about "cognitive difficulties" that were revealed by tests administered to Respondent. *Id.* at 17.

---

**1.** In the District of Columbia, this Rule is DR 9–103.

The Maryland Court of Appeals adopted the approach recommended by the psychiatrists. Concluding that a causal connection between the illness and the misconduct had been proven—and noting that Respondent had no prior disciplinary infractions and was undergoing treatment for his illness—the Maryland court ordered Respondent suspended for an indefinite period, but gave him the right to reapply after ninety days. However, if and when Respondent applied for reinstatement, he had to undertake the following commitments: (a) payment of the costs of the Maryland disciplinary proceedings, in the amount of $5,446.25; (b) continuation of psychiatric therapy for two years, with quarterly reports for the physician to be submitted to Maryland Bar Counsel; (c) consent to use of a practice monitor for two years to review Respondent's activities, particularly his handling of files and financial records, with the monitor co-signing all escrow checks; and (d) payment to the complaining physician of the sums owed, including interest.

As indicated, Respondent presumably agreed to those conditions because he is now permitted to practice in Maryland. The issue now before us is whether to impose the same discipline in the District of Columbia.

### Applicable Rules

Our action in this case is governed by Rule XI, Section 11, of the D.C.Bar Rules, as well as by the Court's recent decision in *In re Reid*, 540 A.2d 754 (D.C.1988).[2]

Under Subsection (c) of Section 11, reciprocal discipline is to be imposed unless the attorney demonstrates, by clear and convincing evidence, that one or more of the following conditions exist:

(1) The procedure in the other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the Court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct in the other jurisdiction does not constitute misconduct in the District of Columbia.

Unless there is a judicially-accepted finding by the Board under paragraphs (1), (2), or (5) above, the final determination by the foreign jurisdiction that an attorney has been guilty of professional misconduct conclusively establishes that misconduct for purposes of our reciprocal disciplinary proceeding. What this means in the present case is that, unless Respondent has demonstrated due process defects or serious infirmities of proof in the Maryland proceedings, or shows that the misconduct determined in Maryland would not be disciplinary offenses in the District of Columbia, we are bound to view the offenses adjudicated by the Maryland courts as conclusively established here. Because Respondent has not contested any aspect of the Maryland proceedings, either in the Maryland courts or before this Board, the intentional misappropriation adjudicated in Maryland must be deemed to be established for purposes of our proceedings.[3]

---

2. The Court's decision in *Reid* predated the present version of Rule XI, Section 11, which went into effect on September 1, 1989. However, the Court in *Reid* took note of the then contemplated amendment to Rule X and stated its belief that "our present construction of [the rule governing reciprocal discipline] is consistent with the ... proposed revision." 540 A.2d at 758, fn. 3.

3. The order of the Maryland Court of Appeals does not specifically state that the facts found were proven on the basis of the standard of "clear and convincing" evidence, which is the standard we must apply here. However, the procedural rules in Maryland expressly require that factual findings in disciplinary cases be supported "by clear and convincing evidence." Maryland Rule BV 10 d.

Under our rules, if the Board concludes that reciprocal discipline should not be imposed because the misconduct warrants substantially different discipline here (assuming we do not make a finding under Paragraph (1), (2) or (5)), then we must:

(1) recommend appropriate discipline to the Court, or

(2) refer the matter to a Hearing Committee for its recommendation as to the appropriate discipline, or

(3) direct Bar Counsel to institute such proceedings as may be appropriate. [Rule XI, Section 11(g) ].

Rule XI now confirms what the Court of Appeals held in *Reid, supra,* that, even if we cannot recommend reciprocal discipline, we can recommend different discipline without requiring *de novo* proceedings. For reasons we now discuss, this is what the Board recommends here.

### *The Recommended Discipline*

As has been indicated, we must take it as established in these proceedings that Respondent engaged in a disbarment offense—intentional misappropriation of funds. However, for this offense, the Maryland Court of Appeals suspended Respondent for a minimum period of ninety days and for an indefinite period thereafter. In so doing, the Court imposed a form of discipline that is not recognized in this jurisdiction.

Under our rules, an attorney cannot be suspended for an indefinite period. Moreover, disbarment here precludes an attorney from seeking reinstatement for five years from the date of disbarment. Thus, the misconduct established in Maryland warrants substantially different discipline in this jurisdiction in that the "upper range of any sanction here would be 'substantially different' from the sanction imposed" by the Maryland Court. *In re Garner,* 576 A.2d 1356 (D.C.1990). *See also In re Reid,* 540 A.2d 754, 759 (D.C.1988).

In *Reid,* the Maryland Court had indefinitely suspended the lawyer, but entered its order "without prejudice to his right to apply for reinstatement after the expiration of a period of thirty (30) days." 540 A.2d at 755. The lawyer in *Reid* had been found guilty of an intentional misappropriation of client funds. Nevertheless, because the lawyer was an alcoholic, a condition that was proven to be the cause of the misconduct, and because treatment was underway, the Court treated the alcoholism as a mitigating factor as in *In re Kersey,* 520 A.2d 321 (D.C.1987). The Court in *Reid* followed our recommendation that, although the lawyer should be disbarred, execution of the disbarment should be immediately stayed, and the lawyer should be placed on probation for five years subject to monitoring and other conditions. *Supra,* 540 A.2d at 756.

The *Reid* case involved alcoholism while the present proceedings involve manic-depressive mental illness as the proposed mitigating factor. Despite this distinction, we believe the approach laid out in *Reid* should be followed. The Court recently held that mental illness of the sort that Respondent demonstrated in this case may, like alcoholism, be treated as a mitigating factor in appropriate cases, observing:

Where, as in this case, the Respondent himself proffers evidence of chronic depression at the time of the alleged misconduct and consents to the recommended probation, we can appropriately approve an extended, supervised period of probation in lieu of all or part of a shorter period of suspension. *In re Peek,* 565 A.2d 627, 634 (D.C.1989). [footnote omitted].

Although the offense in *Peek* was attorney neglect, an offense that is less serious than the intentional misappropriation conclusively established here, whether a physical or mental condition may serve as mitigation without regard to the seriousness of the violation.[4] The violations in *Kersey* were far more serious than those in *Reid,*

---

**4.** Respondent has not asserted the bipolar illness as a *defense* to the charges here, so we need not address the issue as to whether such condition can serve as a defense to an intentional misappropriation charge.

yet mitigation was allowed in both cases. As the Court said in *Reid*, "The sanction imposed in *Kersey* did not necessarily turn on the egregiousness of the conduct at issue there." 540 A.2d at 759.

If, for purposes of mitigation, mental illness of the type demonstrated by Respondent (and of the type found by the Board in *Peek*) may be treated the same as the alcoholism in *Kersey*, then the type of discipline we recommended in *Reid* may also be imposed here. We may recommend the imposition of conditions more exacting than those imposed by the Maryland authorities for the same offense. In *Reid*, we recommended that probation be in effect for five years, whereas Maryland only required two years' probation. The Court approved our action in *Reid*, and we view that as precedent for the discipline we recommend in this case.[5]

Accordingly, the Board recommends that Respondent be disbarred for misappropriation of funds. However, consistently with what the Court did in *Kersey, Reid*, and, most recently, in *Peek*, the Board recommends that the Court should immediately suspend the disbarment and impose probation for a three year period,[6] dating from when Respondent was first suspended in the District of Columbia—January 18, 1990. During such three year period, Respondent should be required to continue therapy at his expense with a psychiatrist of his choice or a medical provider approved by D.C.Bar Counsel, and quarterly reports of such therapy shall be submitted to Bar Counsel.

In addition, Respondent's practice in the District of Columbia should also be supervised by a lawyer-monitor selected by the Board, and this monitor shall take such action as is necessary to make reasonable determinations at appropriate intervals that Respondent is not neglecting any District of Columbia legal matter entrusted to him or mishandling any financial matters relating to his practice here. The monitor will co-sign all escrow checks to and by Respondent in District of Columbia matters and should promptly report to District of Columbia Bar Counsel if Respondent fails to act promptly or properly on behalf of his clients.

If District Bar Counsel or the D.C. monitor believes that Respondent may have violated a probation condition or disciplinary rule, he or she should be required to report the violation to the Board, which will then direct Bar Counsel to investigate the alleged violation and proceed to prove such violation in proceedings brought before a Hearing Committee. If the violation is found, Respondent would be suspended from practice in the District of Columbia immediately. The Board would then determine whether or not Respondent's violation requires probation revocation and would so recommend to the Court. Any party will have the right to petition the Board for a stay of the suspension pending its decision and the Board's decision on revocation may

---

5. Although Bar Counsel agrees that the misconduct established in Maryland warrants substantially different discipline in this jurisdiction and reminds us that the Board may recommend different discipline from that imposed in Maryland without being required to hold a *de novo* hearing, Bar Counsel makes no recommendation as to probation in this case. Respondent, for his part, argues against disbarment because of the mitigating factor or "bipolar illness which prevented him from carrying on his legal duties as he had in the previous thirty-five (35) years and during which time he could not sleep or function properly." [Response of Respondent, 3/6/90, p. 1.] Respondent also points out that he had practiced in the District of Columbia since 1952 without ethical problems, and that during this period he had been President of the

Association of Plaintiff Trial Lawyers, Chairman of the Negligence Committee of the Bar Association, and "he has tried many cases with at least fair success." Respondent requested that "he be placed on a period of supervised probation or whatever other limited form of discipline may appear proper; but urges that he not be disbarred." [*Id.* at p. 2.]

6. Respondent's disbarment would, of course, result in a suspension for at least five years. Therefore, it would be appropriate for us to recommend imposition of probation for the same five year period. However, under the recent revisions to Rule XI, the duration of probation cannot exceed three years. Rule XI, Sec. 3(a)(7).

then be appealed to the District of Columbia Court of Appeals.

In our decision in *Reid*, we discussed the interrelationship between the monitoring that had been ordered in Maryland as a condition to Respondent's reinstatement and the new monitoring we were ordering. The Board was concerned about possible needless duplication of effort and noted in that opinion that:

> If reciprocal discipline imposed in this jurisdiction is conceptually nothing more than the shadow of the discipline in a foreign jurisdiction, then in this case Respondent's right to practice in the District of Columbia could rise and fall automatically with its right to practice in Maryland. On the other hand, if the concept of reciprocal discipline imposed by this jurisdiction ends with the initial order entered here, then all reinstatement and probation matters would be governed by the rules and procedures in this jurisdiction.

In *Reid*, the Board resolved the issue by appointing its own monitors (a practice and financial monitor) for the lawyer's District of Columbia matters—rather than relying on the monitors who were supervising Respondent's Maryland practice. This was felt to be appropriate because the probation we were imposing was to run for a longer period than the Maryland probation and because there was concern that, "if no monitors are appointed in the District of Columbia, Respondent's monitors in Maryland might be unaware of a violation committed in the District of Columbia, or might feel that they had no jurisdiction over, or little concern about, a violation occurring only in the District of Columbia." We believe that the same considerations are applicable in the present case, although we think that one District of Columbia monitor should be sufficient for Respondent's financial and practice matters.

### Conclusion

Accordingly, we recommend that Respondent be disbarred in the District of Columbia, effective as of January 18, 1990; that execution of the disbarment be stayed immediately; that Respondent be placed on probation for a period of three years from the said date; and that the conditions of such probation be as we have specified above.

DATED this 28th day of September, 1990.

Respectfully submitted,

BOARD ON PROFESSIONAL RESPONSIBILITY

By: //ss// CHARLES R. DONNENFELD
Charles R. Donnenfeld
Vice Chair

All Members of the Board join in this report, except for Members Freund and Williams, who did not participate.