**In re John J. MAHONEY, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 90–1191.**

District of Columbia Court of Appeals.

Submitted Nov. 5, 1991.
Decided Jan. 9, 1992.

---

Before WAGNER and KING, Associate Judges, and REILLY, Senior Judge.

KING, Associate Judge:

Respondent, a member of the bars of New Jersey and the District of Columbia, was issued a public reprimand by the Supreme Court of New Jersey, and ordered to be subject to a one-year proctorship on July 20, 1990, for his neglect of four separate clients during his representation of them in real estate matters over a two year period. The proceeding comes before this court from the Board of Professional Responsibility (the Board) as a reciprocal discipline case. The Board concluded that the violations found by the Supreme Court of New Jersey are equivalent to or substantially similar to violations of DR 6–101(A)(3) (neglect), DR 9–103(B) (inappropriate maintaining of a trust account), DR 1–102(A)(4) (dishonesty, fraud, deceit, or misrepresentation), and DR 7–101 (intentional failure to seek lawful objectives of client). With the exception of one member who did not participate, the Board recommends a four-month suspension, a substantially different discipline from that imposed by the Supreme Court of New Jersey. The Board report is attached as an appendix. Respon-

dent has filed no objection to this recommendation.

In his statement to the Board, Bar Counsel noted that a suspension of at least three months would normally be the sanction in a case such as this, however, he concluded that certain mitigating factors considered by the New Jersey Supreme Court justified imposition of reciprocal discipline, *i.e.*, reprimand subject to one-year proctorship (which is equivalent of probation under our system). Bar Counsel has filed no further pleadings in this matter in this court.

■ We are in general agreement[1] with the Board's analysis of the conduct that constituted the violations and its determination of the corresponding rule violations in this jurisdiction. In reciprocal discipline cases the Bar rules provide that the court shall impose identical discipline unless it clearly finds that any one of five factors[2] has been demonstrated. Four of the factors are not applicable, however, the Board concluded that the fifth was, *i.e.*, that the misconduct warranted substantially different discipline in this court. We agree with that conclusion.

This court has on several occasions imposed different and more severe discipline from that imposed by the other jurisdictions when we have concluded that the misconduct warranted the more severe sanction. In *In re Brickle*, 521 A.2d 271 (D.C.1987), respondent was appointed to administer an estate in Virginia. After it was found that he had forged the co-administrator's signature on checks, resulting in the misappropriation of funds, respondent's resignation from the Bar was accepted by the Supreme Court of Virginia. We concluded that the conduct warranted disbarment and since that sanction was substantially different from that imposed in Virginia, reciprocal discipline was not imposed. *Id.* at 273. Similarly, in *In re Larsen*, 589 A.2d 400 (D.C.1991), we declined to impose

1. In two of the cases the Board characterizes respondent's misconduct as amounting to dishonesty. We have no difficulty with that characterization in the *Sabelli* case, however, we believe that in *Matyiku*, the misconduct can more accurately be characterized as a misrepre-

sentation rather than dishonesty. Either would constitute a violation of DR 1–102(A)(4).

2. The five factors are set forth in the Board's Conclusion and Recommendations set forth in the appendix.

reciprocal discipline when respondent was found to have misappropriated client funds. *Id.* Maryland imposed an indefinite suspension. Our authorities, however, call for disbarment for such conduct, and we agreed with the Board's recommendation that that sanction be imposed.[3] *Id.* at 401; *accord, In re Reid,* 540 A.2d 754 (D.C. 1988).

In *In re Garner,* 576 A.2d 1356 (D.C. 1990), we set forth the standards applicable to recommendations of substantially different discipline. *Garner* requires that the Board consider whether the discipline of the foreign jurisdiction is within the range of sanctions that would be imposed for the same misconduct in the District of Columbia. *Id.* at 1357. Applying *Garner,* the Board determined that the discipline ordinarily imposed in this jurisdiction for respondent's misconduct is a suspension of from two to six months. *In re Santana,* 583 A.2d 1011 (D.C.1990) (two-month suspension for neglecting matters for two clients); *In re Reback,* 513 A.2d 226 (D.C. 1986) (en banc) (six-month suspension for neglect of a matter and subsequent filing of complaint with forged, notarized signature). Bar Counsel agrees, noting that a suspension of at least three months would ordinarily be the sanction under these circumstances.

Respondent's misconduct reflected a pattern of behavior involving four separate clients. In some instances the neglect continued for as long as two years, and in two cases was compounded by deceit and misrepresentation. Therefore, we agree that the misconduct in question called for a suspension of the duration found by the Board.[4] The question then becomes: Is a suspension for a period of between two and six months a substantially different sanction than a reprimand with some period of probation? We hold that it is.

■ Although we have never previously addressed this issue, we conclude that suspension is a different level of punishment and a significantly more severe sanction than a reprimand with probation. *Cf. Brickle, supra* at 273 (disbarment substantially different from voluntary resignation); *Larsen, supra,* 589 A.2d at 400 (disbarment substantially different from indefinite suspension). Our rules provide that a reprimand is the fourth most severe sanction after disbarment, suspension, and censure by the court. D.C.Bar R. XI, Section 3(a).[5]

During a period of suspension an attorney must close down his practice of law.

---

**3.** The Board recommended, and we agreed, that the disbarment should be stayed and respondent be placed on probation for three years because the misconduct resulted from mental illness. *Larsen, supra,* 589 A.2d at 401. See *In re Kersey,* 520 A.2d 321, 326–28 (D.C.1987).

**4.** We note, on the other hand, reprimand or public censure has been generally reserved for conduct much less grave than that committed by respondent. *In re O'Neill,* D.N. 502–82 (B.P.R. April 25, 1985) (non-practice-related checks written on accounts with insufficient funds); *In re Walls,* D.N. 460–86 (B.P.R. November 23, 1987) (failure to appear at client's Department of Motor Vehicles hearings and to keep client informed).

**5.** D.C.Bar R. XI, Section 3(a) provides:

(a) *Types of discipline.* Any of the following sanctions may be imposed on an attorney for a disciplinary violation:

(1) Disbarment by the Court;

(2) Suspension by the Court for an appropriate fixed period of time not to exceed three years. Any order of suspension may include a requirement that the attorney furnish proof of rehabilitation as a condition of reinstatement. In the absence of such a requirement, the attorney may resume practice at the end of the period of suspension without further order of the Court;

(3) Censure by the Court;

(4) Reprimand by the Board;

(5) Informal admonition by Bar Counsel;

(6) Revocation or suspension of a license to practice as a Special Legal Consultant; or

(7) Probation imposed by the Court, for not more than three years. Probation may be imposed in lieu of or in addition to any other disciplinary sanction. Any condition of probation shall be stated in writing in the order imposing probation. The order shall also state whether, and to what extent, the attorney shall be required to notify clients of the probation. The Board by rule shall establish procedures for the supervision of probation. Violation of any condition of probation shall make the attorney subject to revocation of probation and the imposition of any other disciplinary sanction listed in this subsection, but only to the extent stated in the order imposing probation.

Clients with immediate needs must be referred to others and little or no income can be expected. On the other hand, with the lesser sanction the attorney would be free to practice without significant restriction. Thus, we conclude that a suspension is a substantially different sanction than a reprimand with probation, that respondent's conduct warrants a suspension, and that as a result, reciprocal discipline should not be imposed.

 The only question remaining is whether factors presented by the respondent as mitigating would justify a sanction less than that recommended by the Board. We note that the New Jersey Disciplinary Review Board (DRB) (essentially the equivalent of our Board on Professional Responsibility) itself recommended a three-month suspension and found that the factors offered in mitigation were not persuasive. The New Jersey Supreme Court disagreed with the DRB as did Bar Counsel, and each justified a sanction of reprimand and proctorship because of that mitigation. The Board, however, was unimpressed with the so-called mitigating factors and we are as well.

The factors in mitigation considered by the New Jersey Supreme Court were: (1) respondent has now gotten his practice in order, and (2) he was under some pressure from his clients. The pressure complained of resulted principally from the fact that respondent maintained his office in his home and that he had informed his clients of his wife's place of employment. As a result his clients made demands on him day and night and his wife was subjected to calls from them at her work place. To remedy these problems respondent has relocated his office to a place outside of his residence. We are unpersuaded that the sanction should be reduced for those reasons. Respondent created the situation, subjected himself to the pressure, and did nothing with respect to those clients to alleviate it for a period of at least two years. Respondent should not benefit from his own failings.

Bar Counsel, in urging consideration of this pressure as a mitigating factor, relies upon *In re Peek*, 565 A.2d 627 (D.C.1989). In *Peek*, counsel in one case (as opposed to four cases for respondent), neglected a legal matter entrusted to him, failed to seek the client's lawful objectives, and engaged in conduct involving misrepresentation. The Board's initial conclusion was to recommend a four-month suspension; however, it agreed to suspend two of the four months with a two year period of probation because of significant psychiatric evidence that counsel was suffering from severe depression which directly affected his representation in the case for which he was being sanctioned. That is a very different case than the one presented by respondent's circumstances. The pressure facing him came from his clients calling him at his home and calling his wife at work. The calls were prompted by respondent's neglect of the legal matters entrusted to him, and his failure to respond to his clients' legitimate inquiries about their legal concerns. Respondent created the circumstances which induced the pressure from his clients. Indeed the pressure came after his neglect, deceit and misrepresentation, and we do not believe that the fact he might have been affected by the demands of his clients justifies reducing the sanction for his misconduct to a reprimand.

In sum, we agree with both the Board and Bar Counsel that a period of suspension of six months or less is ordinarily warranted by the conduct found here. We are also satisfied that a suspension of that duration is substantially different from a reprimand since during that period of suspension respondent would be unable to practice law at all in this jurisdiction. Finally, although some mitigating factors were presented to and accepted by the New Jersey Supreme Court we are unpersuaded that those factors are sufficient to justify imposing a sanction that is substantially more lenient than would ordinarily have been imposed.

Accordingly, it is ORDERED that respondent, John J. Mahoney, is suspended from the practice of law in the District of Columbia for a period of four months, ef-

fective thirty days from the date of this Order.

*So ordered.*

REILLY, Senior Judge, concurring specially:

Were it not for respondent's obvious lack of concern with these proceedings as indicated by his failure to submit any objection—let alone a brief—to the recommendation of the Board, I should be inclined to agree with Bar Counsel and dispose of the matter by merely entering an order identical with that of the Supreme Court of New Jersey which imposed a public reprimand, not a four month suspension. While I do not disagree with the learned opinion of Judge King accepting the recommendation of the Board, notwithstanding certain flaws in its lengthy supporting memorandum, it seems to me that the Board once having read the New Jersey record should not have forced *sua sponte* this already overburdened court to deal with so trivial an issue.

The only reason why this court should get involved with problems of reciprocal discipline is to protect our citizens from being victimized by lawyers who have been disbarred for some flagrant misconduct by the state where their law offices are located and where they practice, by preventing such lawyers from opening an office here if they happen to be members of our bar, and perhaps doing the same thing all over again at the expense of unsuspecting District of Columbia clients. This record reveals that the only office respondent maintained was in his own house, that he specialized in residential real estate conveyancing, and is still a member in good standing in his home state under the decree of its highest court. In these circumstances, any notion that he might be likely to pull up stakes and practice here in a field of law, which in this jurisdiction is a virtual monopoly of title corporations, is far-fetched. Plainly the four-month suspension the Board has so laboriously sought to justify is academic—a classic instance of "much to do about nothing."

APPENDIX

DISTRICT OF COLUMBIA
COURT OF APPEALS

BOARD ON PROFESSIONAL
RESPONSIBILITY

In the Matter of: JOHN J. MAHONEY, Respondent.

Bar Docket No. 348-90

REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

Respondent is a member of the bars of the State of New Jersey and the District of Columbia. By Opinion and Order dated July 20, 1990, the Supreme Court of New Jersey issued a public reprimand to Respondent and ordered that Respondent be subject to a one-year proctorship. On October 9, 1990, the District of Columbia Court of Appeals entered an order pursuant to Rule XI, Section 11(e) of the Rules Governing the District of Columbia Bar directing the Board on Professional Responsibility to recommend whether reciprocal discipline should be imposed on Respondent or whether instead the matter should be heard *de novo*, pursuant to Rule XI, Section 8.

The Board has reviewed the Opinion and Order of the Supreme Court of New Jersey and Bar Counsel's Statement in support of reciprocal discipline. Respondent did not submit any statement. Based on its review of the available record and the pertinent disciplinary cases in this jurisdiction, the Board concludes that the misconduct warrants substantially different discipline. It recommends that Respondent be suspended for a period of four months.

*The New Jersey Proceedings*

The Supreme Court of New Jersey concluded that Respondent had neglected four clients during his representation of them in real estate matters. His misconduct occurred over a two year period. In one case, the *Dinsdales* matter, Respondent was found to have failed to conclude a real estate closing for two years and failed to respond to numerous inquiries from the

clients. Respondent also violated the rules by maintaining his trust account "in slip-shod fashion."

In another case Respondent represented the Monks in a quiet-title action. He did nothing for his clients for more than a year and was "totally unreachable" by his clients.

The third matter involved Respondent's representation of the Matyikus, who sought his help with regard to their pro-spective purchaser's failure to perform un-der a contract for the sale of residential property. As in the other cases, Respon-dent promised that he would begin work on the case, but never did so. He did not keep his clients informed, nor did he return a retainer of $500 in a timely fashion.

The final case involved Respondent's ne-glect of his client Sabelli, which was the conduct that most troubled the Disciplinary Review Board and the Supreme Court. Re-spondent failed to obtain a discharge of a mortgage on Sabelli's home. At one point, Respondent provided his client a faulty dis-charge of the mortgage to file with the County Clerk, knowing that the discharge was irregular and would not be recorded. Respondent admitted that he had provided such to "shut [the client] up," who was "excitable." When he was confronted by the client, Respondent lied to him and said that another discharge of the mortgage had been sent to the Clerk for recording. He later met Sabelli in a parking lot where, according to Respondent, Sabelli screamed, "Make a move so I can leave you dead in the parking lot." Respondent managed to leave unharmed, but "essentially aban-doned" his client, having become fearful of him—during the course of his representa-tion of Sabelli, Respondent had learned that he had a pistol collection and had served time in prison for assault.

The Disciplinary Review Board had rec-ommended a three-month suspension and a one-year proctorship. The Supreme Court agreed with the findings of unethical con-duct but disagreed with the recommended sanction and instead issued a public repri-mand and ordered a one-year proctorship.

Pursuant to Rule XI, Section 11(c), the Board is to consider five factors when de-ciding whether to recommend the imposi-tion of reciprocal discipline. The factors are:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, ac-cept as final the conclusion on that sub-ject; or

(3) The imposition of the same disci-pline by the Court would result in grave injustice; or

(4) The misconduct established war-rants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

The Board has found that four of the factors, Sections 11(c)(1), (2), (3) and (5), do not apply in this case. It appears that Respondent was accorded full due process in New Jersey; the facts of Respondent's violations were established and are not in dispute; his misconduct constitutes miscon-duct in the District of Columbia. In the *Dinsdale* matter, Respondent violated R.P.C. 1.4, which is the equivalent of a violation of DR 6–101(A)(3) in the District of Columbia, and R.P.C. 1.15, which is equivalent to DR 9–103(B). In represent-ing the Monks, Respondent again was found to have violated R.P.C. 1.4; and in the *Matyiku* case, he violated R.P.C. 8.4(c), which is the equivalent to the District's DR 1–102(A)(4) (dishonesty, fraud, deceit or misrepresentation), and R.P.C. 1.3, which is substantially similar to DR 7–101. The Supreme Court of New Jersey's opinion does not mention the specific rules Respon-dent violated in his representation of Sabel-li, but based on the factual findings, we conclude that his misconduct constituted neglect and dishonesty.

Although the Board does not believe that the imposition of the discipline imposed in New Jersey would result in grave injustice, Section 11(c)(3), the Board does believe that the misconduct established warrants substantially different discipline in the District of Columbia Court. Rule XI, Section 11(c)(4).

The Court has instructed the Board in *In re Garner*, 576 A.2d 1356 (D.C.1990), that when the Board considers that it is appropriate to apply the substantially different discipline exception to reciprocal discipline, the Board should first decide whether the discipline of the foreign jurisdiction is within the range of sanctions that would be imposed for the same misconduct in the District of Columbia.

In this case, the Board believes that the range of sanctions imposed in the District for such misconduct, that is misconduct in four separate cases for four different clients, involving neglect, intentional misconduct, dishonesty and poor recordkeeping of client funds, is generally a suspension for two to six months. *See In re Reback*, 513 A.2d 226 (D.C.1986) (*en banc*) (six-month suspension for neglect of a matter and thereafter filing new complaint with forged, notarized signature); *In re Peek*, 565 A.2d 627 (D.C.1989) (four-month suspension with probation for neglect and intentional misconduct when respondent allowed matter to be dismissed and then misrepresented status of case to client); *In re Drury*, 89–822 (D.C.App. May 16, 1990) (four-month suspension for neglect of two matters for one client, misrepresenting status to client, and failing to return file to client); and *In re Santana*, 583 A.2d 1011 (D.C.1990) (two-month suspension for neglecting two matters for two clients).

In the instant case, Respondent's misconduct reflects a pattern of behavior. He neglected four separate matters. One client's case was neglected for two years, and another client's for one year. His serious neglect is compounded by his intentional and dishonest conduct and his lack of attention to his trust account.

In this jurisdiction, the public censure or reprimand is generally reserved for those instances of neglect or dishonesty that are much less grave than the instant matter. *See, e.g., In re O'Neill*, D.N. 502–82 (B.P.R. Apr. 29, 1985) (Board reprimanded respondent who wrote checks for which there was insufficient funds in his account, a matter which was non-practice related); *In re Walls*, D.N. 460–86 (B.P.R. Nov. 23, 1987) (Board reprimanded respondent who failed to appear at his client's hearings before the Department of Motor Vehicles and failed to keep his client informed of the progress of his case); and *In re Margulies*, 88–1032 (D.C.App. Jan. 26, 1989) (Court publicly censured respondent for failing to file brief and misstating to Bar Counsel that he had notified the court of a change of address and that the client agreed not to pursue the appeal). The conduct involved in the reprimand and public censure cases is not comparable conduct to Respondent's, whose violations of the Code were multiple and involved four separate matters for four clients.

Having determined that the discipline in this jurisdiction is different from that ordered in New Jersey for similar misconduct, the Board also concludes that the difference between a public reprimand and a two to four month suspension is substantial and therefore recommends that Respondent be suspended for four months.

The Board disagrees with Bar Counsel, who recommended that reciprocal discipline, that is the identical discipline, be imposed. Bar Counsel concedes that "Respondent's conduct would ordinarily warrant at least a three month suspension", but argued that the mitigating factors taken into account by the New Jersey Supreme Court should be relied upon by the Court in this jurisdiction as well. The mitigating factors cited by the Supreme Court of New Jersey were that Respondent "has taken steps to get his practice in order," and that he was under significant pressure. However, these factors would not warrant mitigating a short suspension to a public censure.

Bar Counsel also supports the year's proctorship for Respondent, asserting that respondents in this jurisdiction have been placed on probation because the respondent's misconduct was stress related, citing *Peek, supra.* In *Peek,* the respondent was placed on probation because his depression, which was diagnosed by a psychiatrist, was a causal factor of his misconduct. There is no such expert testimony concerning Respondent's condition in this record. Respondents have been placed on probation in the District of Columbia when it has been established by a preponderance of the evidence that there is a causal connection between their disciplinary rule violations and either substance abuse or a mental illness. This case does not present such issues. Further, the Board does not believe that a year's proctorship is appropriate in this case.

Respondent has not replied to the Court's order to show cause nor to Bar Counsel's statement. Neither has he indicated by the submission of an affidavit that he has not practiced law in the District of Columbia.

Accordingly, the Board recommends that Respondent be suspended prospectively for four months.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: Hannah Jopling Kaiser
 Hannah Jopling Kaiser

Date: July 31, 1991

All members of the Board concur in this report except Mr. Freund, who did not participate.