**In re David E. GEORGE, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 98–BG–334.**

District of Columbia Court of Appeals.

Submitted Feb. 9, 1999.

Decided March 18, 1999.

Before TERRY and FARRELL, Associate Judges, and BELSON, Senior Judge.

PER CURIAM:

On February 18, 1998, the Court of Appeals of Maryland suspended respondent David E. George from the practice of law in Maryland for a period of sixty days commencing on May 1, 1998. The suspension was to be followed by a six-month supervised probationary period, subject to an additional six months should the practice monitor not be satisfied with respondent's cooperation. Respondent admitted to violating MARYLAND RULES OF PROFESSIONAL CONDUCT 1.3 (failing to act with reasonable diligence and promptness), 1.4 (failing to keep client reasonably informed), 1.8(h) (entering into a prohibited transaction meant to limit the lawyer's liability for malpractice), and 8.4(d) (failing to respond to a lawful demand for information from a disciplinary authority). Respondent consented to this discipline in Maryland.

Pursuant to D.C. Bar R. XI, § 11(d), this court temporarily suspended respondent on March 17, 1998, and referred the matter to the Board on Professional Responsibility ("the Board") for a determination of the appropriateness of reciprocal discipline. Respondent filed an affidavit in compliance with D.C. Bar R. XI, § 14(g) on March 24, 1998. On April 9, 1998, respondent filed a motion to terminate his interim suspension in the District of Columbia after sixty days. Bar Counsel responded, agreeing that the appropriate reciprocal discipline should be a suspension of the respondent for sixty days in the District of Columbia. Bar Counsel asserted that the starting date of suspension period should be March 24, 1998, the day respondent complied with D.C. Bar R. XI, § 14, and its termination date sixty days later, on May 23, 1998. On May 4, 1998, this court ordered that the interim suspension order would be vacated effective May 23, 1998, without prejudice. Further, the court ordered the Board to appoint a practice monitor to supervise respondent's six-month probationary period.

The Board recommends that the sanction finally imposed by this court (as distinguished from the interim suspension) be suspension for sixty days, imposed *nunc pro tunc* to March 24, 1998, to be followed by a six-month period of supervised probation effective May 28, 1998. The Board recommends that respondent be supervised by the same monitor who supervised respondent's Maryland probation period during the same time. The facts pertaining to respondent's conduct are set forth in the Board's Report

and Recommendation, which is attached as an appendix to this opinion.

 When an attorney has been subject to discipline in another jurisdiction, reciprocal discipline should be imposed by this court unless there is clear and convincing evidence that one of the enumerated exceptions of D.C. Bar R. XI, § 11(c) applies. *See In re Gentile,* 706 A.2d 27, 28 (D.C.1998); *In re Garner,* 576 A.2d 1356, 1357 (D.C.1990). Respondent has not argued for any of the exceptions. Therefore, because respondent does not contest the proposed sanction, pursuant to D.C. Bar R. XI, § 9(g), we will accord heightened deference to the recommendations of the Board. *See In re Goldsborough,* 654 A.2d 1285, 1288 (D.C.1995).

 There is a presumption in reciprocal discipline cases that the particular discipline imposed by the District of Columbia will be the same as that imposed by the original disciplining jurisdiction. *See In re Jones,* 686 A.2d 560, 561 (D.C.1996); *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992). The sixty-day suspension is within the range of sanctions this court has imposed for similar misconduct. *See In re Drew,* 693 A.2d 1127, 1127–28 (D.C.1997) (imposing sixty-day suspension for failing to communicate with client on the rate of fee, and failing to serve client with skill and care commensurate with that afforded to clients by other lawyers in similar matters); *In re Lyles,* 680 A.2d 408, 414–18 (D.C.1996) (imposing a six-month suspension for various counts of failing to represent clients with diligence and zeal, failing to serve client with skill and care commensurate with that afforded to clients by other lawyers in similar matters, and interfering with the administration of justice); *In re Brown,* 672 A.2d 577, 578–79 (D.C.1996) (imposing sixty-day suspension as reciprocal discipline for various violations, including a violation of MARYLAND RULE OF PROFESSIONAL CONDUCT 8.4(d)); *In re Landesberg,* 518 A.2d 96, 96–97 (D.C.1986) (imposing sixty-day suspension for failing to pursue client's lawful objective, misleading client concerning status of appeal, retaining an unearned fee, and refusing to return case file to client upon

demand). Further, where suspended attorneys have notified their clients, pursuant to D.C. Bar R. XI, § 14, of their suspension, and filed affidavits with this court confirming that notification, this court has imposed retroactive suspension. *See In re Mulkeen,* 606 A.2d 136, 137 (D.C.1992).

Accordingly, David E. George is hereby ordered suspended from the practice of law for sixty days, the suspension to be imposed *nunc pro tunc* to March 24, 1998. It is furthered ordered that the suspension shall be followed by a probationary period of six months with a practice monitor, effective May 28, 1998.[1]

*So ordered.*

## APPENDIX

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This reciprocal discipline matter is before the Board following Respondent's 60–day suspension with conditions by the Court of Appeals in Maryland. Respondent is a member of the Maryland Bar, having been admitted on June 26, 1985, and a member of the District of Columbia Bar, having been admitted on September 27, 1985.

### *Procedural History*

On August 25, 1997, a Petition for Disciplinary Action was filed by the Attorney Grievance Commission of Maryland. The Petition charged multiple violations with regard to Respondent's representation of three different clients.

On February 17, 1998, Respondent and Maryland Bar Counsel entered into a Joint Petition For Suspension By Consent in which Respondent admitted violations of several rules of Maryland's Rules of Professional Conduct, including Rule 1.3 (failing to act with reasonable diligence and promptness); Rule 1.4 (failing to keep client reasonably informed); Rule 1.8(h) (entering into a prohibited transaction through an agreement

---

1. As of the time of the issuance of this opinion, respondent has served the sixty-day suspension, and has completed the six-month supervised probation.

limiting the lawyer's liability to a client for malpractice); Rule 8.1(b) (failing to respond to a lawful demand for information from a disciplinary authority); and Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice). Respondent agreed to the imposition of a 60–day suspension, commencing on May 1, 1998.

On February 18, 1998, the Court of Appeals of Maryland ordered Respondent suspended for 60 days to commence May 1, 1998, with reinstatement conditioned on Respondent agreeing to a practice monitor for six months, subject to an additional six months if the practice monitor is not satisfied with Respondent's cooperation. Reinstatement was also conditioned on Respondent paying $1,390 DIUS interest to the Attorney Grievance Commission of Maryland.

On March 17, 1998, approximately one and one-half months prior to the commencement of Respondent's Maryland suspension, the District of Columbia Court of Appeals issued an Order temporarily suspending Respondent for 60 days effective immediately and referred this matter to the Board on Professional Responsibility for a determination as to whether identical, greater or lesser discipline should be imposed as reciprocal discipline. On March 24, 1998, Respondent complied with the requirements of D.C. Bar Rule XI, § 14(g).

On April 9, 1998, Respondent filed a motion with the Court of Appeals to terminate his interim suspension imposed in the District of Columbia after 60 days, on the grounds that his Maryland suspension was only 60 days.

In a response filed with the Board, Bar Counsel agreed with Respondent that the appropriate reciprocal discipline should be the same as Maryland's discipline—i.e., a suspension of Respondent's District of Columbia license for 60 days. *See, e.g., In re Gentile,* 706 A.2d 27 (D.C.1998). Bar Counsel further suggested that the starting date of Respondent's suspension should be March 24, 1998 (the day when Respondent complied with Rule XI, § 14(g)) and that the interim order of suspension should be vacated 60 days later on May 23, 1998. Bar Counsel added the caveat that because the Court retains the ultimate authority to impose a more severe sanction as final discipline, and because the Court looks to the Board in the first instance for a report and recommendation concerning appropriate final discipline, the vacatur of the interim suspension after 60 days should be without prejudice to the Board's authority to recommend, and the Court's authority ultimately to impose, different or more substantial discipline than that ordered in Maryland.

On April 29, 1998, Bar Counsel moved the Board for the expedited appointment of a practice monitor so that the monitor would be available when Respondent concluded his suspension in the District of Columbia and commenced his probationary period.[2]

On May 4, 1998, the Court ordered that its March 17, 1998 interim order of suspension be vacated, effective May 23, 1998, without prejudice to the authority of the Board to recommend, and the Court to impose, different or more substantial discipline than that ordered in Maryland, as final discipline in the present proceeding. The Court further ordered the Board to appoint a practice monitor to supervise Respondent's six-month period of probation effective May 28, 1998.

### Respondent's Misconduct

In the Joint Petition for Suspension by Consent, Respondent admitted violating five separate disciplinary rules of Maryland's Rules of Professional Conduct—Rule 1.3 (Diligence); Rule 1.4 (Failure to Keep his Client Reasonably Informed); Rule 1.8(h) (Conflict of Interest: Prohibited Transaction); Rule 8.1(b) (Failure to Respond to Bar Counsel); and Rule 8.4(d) (Engaging in Conduct Prejudicial to the Administration of Justice). The Joint Petition did not, however, contain any stipulations of fact with regard to the three disciplinary matters. Notwith-

---

2. Bar Counsel treated the probation as being for a period for six months. In Maryland, however, the Court of Appeals ordered that Respondent's initial six months monitoring period could be extended for an additional six months if the practice monitor was not satisfied with Respondent's cooperation.

standing certain facts do not appear to be in dispute.

*The Gonzalez Matter.* In 1992, Respondent was retained by a Mrs. Gonzalez to pursue a divorce action. He filed a complaint for absolute divorce on March 18, 1992. In 1994, Respondent filed an amended complaint and served her husband. Thereafter there were defective pleadings filed which Respondent neglected to cure in a diligent manner. In December 1994, Respondent failed to inform Mrs. Gonzalez that he was relocating his office which caused her difficulty in communicating with him. When Mrs. Gonzalez was unable to reach Respondent, she contacted Maryland Bar Counsel who tried to interview him in late 1995. In early 1996, Respondent's conversations with an investigator for Maryland Bar Counsel were less than complete, primarily because Respondent deemed the matter resolved by virtue of the decree of divorce being issued.

*The Peres Matter.* In 1993, Respondent was retained to represent Ms. Peres in a personal injury case against a food warehouse store. In 1994, he filed a civil action. In December 1994, Respondent moved his law office without informing the client, who had difficulty reaching him. At various times thereafter, Respondent failed to substantively communicate with Ms. Peres. In August 1995, Ms. Peres filed an ethical complaint with Maryland Bar Counsel. Thereafter, Ms. Peres took control of Respondent's file and he stopped representing her. Respondent's communications with the investigator from Maryland Bar Counsel were not complete and full. Respondent believed that he had nothing to communicate because the client had taken the file.

*The Moore Matter.* Ms. Moore retained Respondent to defend her in a debt collection matter where she was named as a defendant, based on her husband's purchase of a computer.

In March 1994, Ms. Moore received a notice from the Court addressed to her husband, advising that trial was scheduled for March 29, 1994. She contacted Respondent, who told her that she need not appear on the date indicated and that he would handle the matter. Neither Ms. Moore nor Respondent appeared for trial. A default judgment in the amount of $7,600, together with court costs and attorney's fees of $750, was entered against Ms. Moore. When Ms. Moore learned of the judgment through inquiry to the court, she contacted Respondent. By letter dated April 10, 1995, Respondent advised Ms. Moore that she would "bear no loss in this matter." Statement of Bar Counsel, Attachment C at 8. Respondent failed to advise Ms. Moore that she should seek independent counsel because she might have a cause of action against him. In October 1995, Ms. Moore sought the assistance of new counsel regarding the judgment against her. By letters dated October 2 and November 29, 1995, successor counsel for Ms. Moore sought information regarding the judgment from Respondent, who failed to respond to her inquiries. In February 1996, Ms. Moore filed an ethical complaint with Maryland Bar Counsel. Respondent provided incomplete information relating to his representation of Ms. Moore, including a failure to disclose information in an effort to mislead Maryland Bar Counsel concerning Respondent's actions in the matter.

### Reciprocal Discipline

Reciprocal discipline should be imposed unless there is clear and convincing evidence that one of the enumerated exceptions in § 11(c) of Rule XI applies.[3] *In re Gentile, supra,* 706 A.2d at 28; *In re Gardner,* 650 A.2d 693, 695 (D.C.1994). There is a rebut-

---

**3.** Section 11(c)'s exceptions are:

 (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

 (2) There was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

 (3) The imposition of the same discipline by the Court would result in grave injustice; or

 (4) The misconduct established warrants substantially different discipline in the District of Columbia; or

 (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

table presumption under § 11(c) that the discipline will be the same in the District of Columbia as it was in the original jurisdiction. *In re Spann,* No. 96–BG–1672, slip op. at 2 [711 A.2d 1262, 1263] (D.C. May 21, 1998); *In re Jones,* 686 A.2d 560 (D.C.1996).

Here, Respondent was accorded due process; the misconduct violates the ethical rules of the District of Columbia; there is no infirmity of proof; the misconduct does not warrant substantially different discipline in this jurisdiction.

In the Maryland proceeding, Respondent was granted the opportunity of a full hearing to explore the facts and circumstances of his misconduct, which he waived by stipulating to suspension by consent. He further stipulated that his conduct in the three matters resulted in violation of five Maryland disciplinary rules. The Maryland Rules violated by Respondent are akin to the counterpart provision in the District to Columbia Rules of Professional Conduct.[4] Such slight variations in wording as may exist between the Maryland Rules and those of the District of Columbia pose no impediment to the imposition of reciprocal discipline. *In re Reiner,* 561 A.2d 479, 482 (D.C.1989) (*per curiam* ). All of the misconduct stipulated by Respondent constitutes misconduct in the District of Columbia.

Sanctions in analogous neglect cases have ranged from short suspensions for multiple first violations coupled with other disciplinary infractions, up to suspensions of one year or more. *In re Lyles,* 680 A.2d 408, 418 (D.C.1996). Conduct comparable to Respondent's has resulted in suspensions of sixty days in disciplinary cases originating in the District of Columbia. . *In re Drew,* 693 A.2d 1127 (D.C.1997); *In re Brown,* 672 A.2d 577 (D.C.1996); *In re Landesberg,* 518 A.2d 96 (D.C.1986); *see In re Dory,* 552 A.2d 518, 521 (D.C.1989), *In re Dory,* 528 A.2d 1247 (D.C. 1987) (attorney suspended thirty days in each case, resulting in an aggregate suspension of sixty days in both cases). Probation following a two-month suspension has also been imposed in the District of Columbia for multiple instances of neglect. *In re Peek,* 565 A.2d 627, 634 (D.C.1989); *see also In re Banks,* 97–BG–329 & 97–BG–1875 [709 A.2d 1181] (D.C. May 7, 1998) (attorney suspended for ninety days, with execution of final thirty days stayed, with probation for a period of one year).

Based on a review of the caselaw, it is clear that Respondent's 60–day suspension in Maryland followed by six months to one year of probation with a practice monitor clearly falls within the range of sanctions imposed in the District of Columbia. Thus, identical discipline should be imposed in this matter.

There are, however, several practical matters which should be touched upon with regard to the appointment of the practice monitor. Normally in reciprocal discipline cases where a practice monitor is required in the course of imposing identical discipline, the Board will ask the same practice monitor selected in the foreign jurisdiction to serve as the practice monitor under the probation order imposed by the Court. This is dictated by reasons of practicality and economy.

In terms of being practical, two considerations come into play. First, there are a limited number of attorneys in the District of Columbia who are willing to serve as practice monitors, as service with groups such as the Lawyers Practice Assistance Committee (LPAC) takes significant time and patience. The second practical consideration is distance. In many of the reciprocal discipline cases, the respondent has been sanctioned in a jurisdiction far from the District of Columbia and the attorney has no active practice here. As a result, dual monitoring has no beneficial function. *See, e.g., In re Slosberg,* 650 A.2d 1329, 1333 (D.C.1994) (attorney practiced in Maine); In re Chadwick, 585 A.2d 798 (D.C.1991) (attorney practiced in New Jersey); *In re Hirschberg,* 565 A.2d 610, 615 (D.C.1989) (attorney practiced in Wisconsin). In terms of economy, efforts are made not to have dual monitors because of

---

**4.** Rules 1.3(a) and (c) (failure to represent client diligently and promptly); Rule 1.4(a) (failure to keep client informed); Rule 1.8(g)(2) (settling malpractice claim with unrepresented client without first advising client to seek independent counsel); Rule 8.1(b) (failure to respond to inquiries of disciplinary authority); and Rule 8.4(d) (conduct prejudicial to administration of justice).

the significant expenses involved—to both jurisdictions (although our concerns are reserved to the District of Columbia).

In this matter, it appears that Respondent has a substantial practice in the District of Columbia.[5] It is also fortuitous that the practice monitor designated in Maryland is also a member of the District of Columbia Bar and available to monitor Respondent in the District of Columbia. Accordingly, we recommend that a practice monitor also be appointed in the District of Columbia, as opposed to solely relying on the reports from Maryland. As noted in *In re Larsen*, 589 A.2d 400 (D.C.1991), a reciprocal discipline case from Maryland:

> "if no monitors are appointed in the District of Columbia, Respondent's monitors in Maryland might be unaware of a violation committed in the District, or might feel that they have no jurisdiction over, or little concern about, a violation occurring only in the District of Columbia."

Id. at 406, quoting from the Board Report in *In re Reid*, 540 A.2d 754 (D.C.1988). With a monitor in both jurisdictions, albeit the same person, no case should avoid review.

### Recommendation

The Court should impose identical discipline of a 60–day suspension, *nunc pro tunc* to March 24, 1998, to be followed by a period of probation of six months with a practice monitor, effective May 28, 1998. The probation shall track the terms of the probation imposed in Maryland.

**BOARD ON PROFESSIONAL RESPONSIBILITY**

By: ————————————————
Paul L. Knight

Dated: June 19, 1998

All members of the Board concur in this Report and Recommendation.

---

**5.** Respondent's § 14(g) affidavit shows that he was handling a number of cases in the District of Columbia. When the Maryland Bar investigator tried to interview Respondent, he indicated that he was reachable at court in the District of Columbia.