Richard DESPEARS, Plaintiff–Appellant,

v.

MILWAUKEE COUNTY, Milwaukee County Personnel Review Board, and Milwaukee County Medical Complex, Defendants–Appellees.

No. 95–1071.

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1995.

Decided Aug. 21, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 22, 1995.

Peter G. Earle (argued), Jacqueline E. Boynton, Boynton & Earle, Milwaukee, WI, for plaintiff-appellant.

Timothy R. Schoewe, Deputy Corp. Counsel (argued), Milwaukee, WI, for defendants-appellees.

Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

This is a suit under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and, because the plaintiff's employer is a recipient of federal funds, also under the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.* The district court granted summary judgment for the defendants, and the plaintiff appeals.

Mr. Despears worked as a maintenance worker for a public medical facility. His work involved occasional driving, to deliver parts; and a regulation of the employer required workers in his job classification to have a valid driver's license. Despears' license was revoked after he was convicted a fourth time of driving under the influence of alcohol. Upon learning of the revocation, his employer demoted Despears to custodial worker, a job classification that does not involve any driving and does not require that the worker have a driver's license—and that pays less. Despears attributes the loss of his license to his having been an alcoholic, and the defendants do not deny that alcoholism is a disability within the meaning of both statutes. *Teahan v. Metro–North Commuter R.R.*, 951 F.2d 511, 517 (2d Cir.1991); Mark Daniels, *Employment Law Guide to the Americans with Disabilities Act*, p. 9–4 n. 7 (1993 Supp.). In urging the reversal of the

district court he argues as follows: alcoholism caused him to drive under the influence of alcohol; driving under the influence of alcohol caused him to lose his driver's license; losing his driver's license caused him to be demoted; therefore alcoholism was the cause of his being demoted; therefore he was discriminated against by his employer on account of a disability, in violation of the statutes. He acknowledges as he must that if his alcoholism prevented him from doing the work required of a maintenance worker, he would not be entitled to any relief. 29 U.S.C. § 706(8)(C)(v); 42 U.S.C. § 12114(c); *Graehling v. Village of Lombard,* 58 F.3d 295, 296 (7th Cir.1995); *Leary v. Dalton,* 58 F.3d 748, 753 (1st Cir.1995). (*Graehling* and *Leary* are cases under the Rehabilitation Act. We cannot find an appellate case under the Americans with Disabilities Act that involves alcoholism.) But he contends, and at this stage in the proceeding we must accept, that driving was not an essential part of his job as a maintenance worker.

Although something like a third of all drivers who are convicted for driving under the influence of alcohol are not alcoholics in the sense of persistent alcohol abusers (Transportation Research Board of the National Research Council, "Strategies for Dealing with the Persistent Drinking Driver," pp. 1, 21 (Transportation Research Circular No. 437, Feb. 1995); Eric J. Gouvin, Note and Comment, "Drunk Driving and the Alcoholic Offender," 12 *American Journal of Law & Medicine,* 99, 116 (1986)), and although many alcoholics refrain from driving while under the influence of alcohol, there is no doubt (though we cannot find any statistics on the question) that an alcoholic is more likely than a nonalcoholic to lose his license because of drunk driving. The high fraction of alcoholics among persons convicted of drunk driving implies this, as does the fact that the set of nonalcoholics includes many people who do not drink at all and therefore never lose their license because of drunk driving. So alcoholics are more likely, probably much more likely, to lose their driver's license because of drunk driving than people who are not alcoholics, and this is enough to show that there is a causal relation between Despears' alcoholism and his demotion. We may assume, because he claims not implausibly and there is no contrary evidence at this stage, that he would not have been convicted four times of drunk driving had he not been an alcoholic and that his alcoholism also made it antecedently more probable that he would be convicted. A necessary condition that makes the event of which it is a condition more likely to occur is a "cause" for most purposes in law, *Brackett v. Peters,* 11 F.3d 78, 79 (7th Cir.1993), including we may assume the ADA and the Rehabilitation Act. If someone asked Despears why he was demoted and he replied that it was because he was an alcoholic, we would not have a sense that he was using the word "cause" in an incorrect or even a nonstandard way.

But a cause is not a compulsion (or sole cause); and we think the latter is necessary to form the bridge that Despears seeks to construct between his alcoholism and his demotion. If being an alcoholic he could not have avoided becoming a drunk driver, then his alcoholism was the *only* cause of his being demoted, and it would be as if the employer's regulation had said not that you must have a valid driver's license to be a maintenance worker but that you must not be an alcoholic. But Despears' alcoholism was not the only cause of his being convicted of drunk driving. Another cause was his decision to drive while drunk. Some alcoholics are drunk all the time, but obviously not all—and not Despears, since if he were drunk all the time he could not function as a custodial worker, let alone as a maintenance worker. The criminal law, by refusing to recognize alcoholism as a defense to a charge of driving under the influence of alcohol, takes the not irrational position that alcoholics *are* capable of avoiding driving while drunk. "[E]ven among many who consider alcoholism a 'disease' to which its victims are genetically predisposed, the consumption of alcohol is not regarded as wholly involuntary," *Traynor v. Turnage,* 485 U.S. 535, 549–50, 108 S.Ct. 1372, 1383, 99 L.Ed.2d 618 (1988)—and certainly the conjunction of that consumption with a decision to drive a car cannot be thought wholly involuntary. If it were wholly involuntary, and the criminal law punished these unfortunates anyway, there

might conceivably be a constitutional issue. *Robinson v. California*, 370 U.S. 660, 666–67 and n. 8, 82 S.Ct. 1417, 1420–21 and n. 8, 8 L.Ed.2d 758 (1962), holds that to make a status, such as that of being a substance abuser (of which an alcoholic is an example), a criminal offense violates the cruel and unusual punishments clause of the Eighth Amendment. *Robinson* is distinguishable from our hypothetical case, that of the involuntary alcoholic driver. What would be punished in that case would still be behavior, and there are strict liability crimes—crimes that cannot be avoided by the exercise of due care. A state, although limited in its right under the Constitution to put to death or even on trial a person who is mentally incompetent, *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); *Medina v. California*, 505 U.S. 437, 451–53, 112 S.Ct. 2572, 2581, 120 L.Ed.2d 353 (1992), is not constitutionally obligated to recognize a defense of insanity—several states have abolished the defense (see *State v. Searcy*, 118 Idaho 632, 798 P.2d 914, 916–19 (1990), and *State v. Byers*, 261 Mont. 17, 861 P.2d 860, 866 (1993) (overruled on other grounds in *State v. Egelhoff*, — Mont. —, —, 900 P.2d 260, 266 (1995)), both upholding the abolition against constitutional challenge); and refusing to excuse an offender who was acting under the compulsion of alcoholism would be the equivalent of refusing to recognize a defense of insanity.

But we have drifted from the point, which is simply that the criminal law proceeds on the premise that even alcoholics can avoid driving while under the influence of alcohol. And if this is so, then Despears despite his alcoholism could have avoided the demotion of which he complains by avoiding driving while drunk. His disability concurred with a decision to drive while drunk to produce the loss of license and resulting demotion. The disability contributed to but did not compel the action that resulted in the demotion.

To impose liability under the Americans with Disabilities Act or the Rehabilitation Act in such circumstances would indirectly but unmistakably undermine the laws that regulate dangerous behavior. It would give alcoholics and other diseased or disabled persons a privilege to avoid some of the normal sanctions for criminal activity. It would say to an alcoholic: We know it is more difficult for you to avoid committing the crime of drunk driving than it is for healthy people, and therefore we will lighten the sanction by letting you keep your job in circumstances where anyone else who engaged in the same criminal behavior would lose it.

The refusal to excuse, or even alleviate the punishment of, the disabled person who commits a crime under the influence as it were of his disability yet not compelled by it and so not excused by it in the eyes of the criminal law is not "discrimination" against the disabled; it is a refusal to discriminate in their favor. It is true that the Americans with Disabilities Act and the Rehabilitation Act require the employer to make a reasonable accommodation of an employee's disability, but we do not think it is a reasonably required accommodation to overlook infractions of law. *Leary v. Dalton, supra*, at 753.

We can imagine a slightly different case in which Despears would stand on firmer ground. Suppose when he was hired by the medical facility he told his employer, "I dare not drive because of my alcoholism, and therefore I ask you to excuse me from having to have a driver's license to be a maintenance worker, since driving is not an essential part of the job." That would be a request for an accommodation, rather than a request to be excused from a consequence of criminal activity. The latter request seems to us to have no status in the law of disability discrimination, save possibly in the case, if there is such a case—if the Eighth Amendment allows there to be a case—where the disability itself, or an inevitable rather than merely likely consequence of it, is the crime.

AFFIRMED.