**In re Matthew J. MARSHALL, Jr., Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 97–BG–1095.**

District of Columbia Court of Appeals.

Argued Oct. 19, 1999.

Decided Nov. 22, 2000.

**SCHWELB, Associate Judge:**

The Board on Professional Responsibility has recommended that Matthew J. Marshall, Jr. be disbarred for misappropriation of client funds and for submitting fabricated documents to Bar Counsel during Bar Counsel's investigation of the allegations of misappropriation. Marshall has excepted to the Board's recommendation. He contends that a lesser sanction should be imposed because, according to Marshall, his conduct was the result of his addiction to cocaine, an addiction from which he claims to have been substantially rehabilitated. We conclude that the principles of *In re Kersey*, 520 A.2d 321 (D.C.1987), should not be applied to Marshall's cocaine addiction, and we adopt the Board's recommendation that Marshall be disbarred.

## I.

## THE FACTS

### A. *Marshall's misconduct.*

Marshall was admitted to practice in the District of Columbia in 1984. He was initially employed by the Council of the District of Columbia, but he was discharged in 1987 for cocaine use. Marshall subsequently became a solo practitioner in the District.

In December 1994, Bar Counsel filed a petition alleging that Marshall had misappropriated the funds of a client, Samuel Warrick,[1] that he had commingled client funds with his own,[2] and that he had misrepresented facts to Bar Counsel.[3] Bar Counsel requested that Marshall be disbarred. Marshall filed a *pro se* answer in which he admitted his misconduct but ascribed his behavior to "a dysfunctional emotional state" and to "emotional, irrational panic."

Steven G. Polin, Washington, DC, for respondent.

Ross T. Dicker, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel at the time the brief was filed, and Michael S. Frisch, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Charles L. Reischel, Lisa Gabrielle Lerman, and Patricia A. Riley, Washington, DC, filed a brief for the Lawyer Counseling Committee of the District of Columbia Bar, amicus curiae.

Before WAGNER, Chief Judge, and TERRY and SCHWELB, Associate Judges.

1. *See* Rule 1.15(a) of the Rules of Professional Conduct.

2. *See* Rules 1.15(a) and 1.17(a) of the Rules of Professional Conduct.

3. *See* Rule 8.4(c) of the Rules of Professional Conduct.

Bar Counsel's allegations came before Hearing Committee No. 7, which conducted an extensive evidentiary hearing. The facts regarding Marshall's violations were largely undisputed. The evidence showed, and the Hearing Committee found, that in August 1992, Mr. Warrick had retained Marshall to recover damages for personal injuries sustained by Mr. Warrick in an automobile accident. Mr. Marshall was to be paid a contingent fee of one third of any recovery. Warrick also executed two "Authorizations and Assignments" (A & A's) for the purpose of enabling Marshall to pay his treating physician and physical therapist from the proceeds of any recovery. Marshall agreed to withhold the money due to these providers, a total of $1,110.12, from any damages that he obtained on Warrick's behalf, and to pay the providers with the proceeds of the lawsuit.

In November 1992, Marshall settled Warrick's case for $3,500. Marshall took $100 in cash from the settlement proceeds,[4] and deposited the remaining $3,400 in a non-escrow account. During November 1992, the balance in this account fell from $3,429.07 to $1,423.99, and was subsequently reduced even further as a result of checks drawn on the account by Marshall. None of these checks was used to pay Mr. Warrick or his medical providers. Instead, Marshall used the funds for his own expenses,[5] and he spent approximately $700 to purchase crack cocaine. Mr. Marshall did not reveal to his client that he had used the settlement proceeds for his own purposes.

On May 16, 1994, having received nothing from his lawsuit, Mr. Warrick filed a complaint with Bar Counsel, alleging that Mr. Marshall had failed to disburse to Warrick the client's share of the settlement proceeds. Marshall then met with Warrick and belatedly paid him $2,100 or

$2,200. According to Warrick, Marshall also asked him to "be quiet about it."

During Bar Counsel's investigation, Marshall submitted fabricated checks purporting to show that Marshall had paid Warrick's treating physician and physical therapist the amounts due to them. Marshall admitted that these checks were never sent to the medical providers, but were created solely to make it appear that the bills had been paid. Marshall also repeatedly lied to his client and to the health care providers regarding why they had not been paid, and he wrote letters to Bar Counsel containing false statements.

B. *Marshall's Kersey defense.*

Before the Hearing Committee and subsequently before the Board and before this court, Mr. Marshall admitted his misconduct, but he presented a *Kersey* defense in mitigation. This defense was based on our holding in *Kersey* that under some circumstances, alcoholism may be a mitigating factor to be considered in determining the appropriate discipline to be meted out against an attorney who has violated the Rules of Professional Conduct. 520 A.2d at 326. We stated in *Kersey* that, in order to be eligible for mitigation, the respondent must show

1. that he was an alcoholic at the time of his misconduct;

2. that his alcoholism was the cause of his misconduct and substantially affected it; and

3. that there was significant evidence of rehabilitation.

*Id.* at 325–27. In the present case, Bar Counsel did not contest Marshall's claim that he was an addict at the relevant times. Bar Counsel maintained, however, that Marshall had failed in his proof of the second and third prongs.

---

4. This sum was apparently used without Mr. Warrick's knowledge to pay an investigator.

5. The record reflects that Marshall used some of the settlement money to pay a telephone bill and a cable television bill, to refund a legal fee, and to compensate his wife for a broken television set.

In support of his *Kersey* claim, Marshall testified that his conduct "was attributable pretty much to my addiction. I had gone on a binge." He acknowledged that he provided fabricated checks to Bar Counsel "in essence to cover up my misdealings or my misdeeds." In further support of his *Kersey* claim, Marshall called Dr. Thomas Goldman, a psychiatrist, and Dr. Nuha Abudabbeh, a clinical psychologist, as expert witnesses. It was the opinion of each of these experts that Marshall's addiction substantially affected his misconduct. Dr. Goldman testified at some length, and at times somewhat equivocally, on the issue of causation, and he was less than categorical with respect to any significant connection between Marshall's addiction and his fabrication of checks to cover up his misappropriation. Dr. Abudabbeh's opinion, though unequivocal, was quite conclusory.

## C. *The Hearing Committee's Report.*

After finding the facts substantially as recited above, the Hearing Committee concluded that, absent *Kersey* mitigation, Mr. Marshall's conduct warranted disbarment. As to the *Kersey* issue, the Hearing Committee credited the testimony of Dr. Goldman and Dr. Abudabbeh. The Committee found that Marshall had satisfied the "addiction" and "substantial connection" prongs of the *Kersey* standard.[6] The Committee concluded, however, that Marshall had failed to satisfy *Kersey's* rehabilitation prong. The Committee noted that, in November 1995, when the Committee held the portion of the hearing which was addressed to the issue of the appropriate sanction, Marshall claimed to have been free of cocaine for less than six months. The Hearing Committee noted Dr. Goldman's acknowledgment that "it is far too early to know whether [Marshall's rehabilitation] will succeed in the long run, or even in the short run . . . for a period as long as

a year." The Committee recommended that Mr. Marshall be disbarred unless he sought a further hearing to present additional evidence of substantial rehabilitation.

## D. *The Board's initial Report and Recommendation.*

On July 2, 1998, the Board issued a unanimous Report and Recommendation[7] in which, like the Hearing Committee, it recommended disbarment. The Board adopted the Hearing Committee's findings with respect to the historical events and its description of Marshall's conduct, but concluded, contrary to the Hearing Committee's findings, that Marshall had failed to establish a causal connection between Marshall's addiction and his conduct.[8] The Board was of the opinion, in particular, that Marshall's fabrication of evidence had not been shown to have been substantially caused by his abuse of cocaine. Because Marshall had failed to satisfy *Kersey's* second prong, the Board found it unnecessary to decide whether the principles of *Kersey* should be applied in cases of addiction to an unlawful drug such as cocaine. In light of its conclusion as to causation, the Board declined to reopen the record for further evidence on the issue of rehabilitation. Instead, the Board recommended that Marshall be disbarred.

## E. *The remand.*

Marshall filed an exception to the Board's Report and Recommendation. He argued, *inter alia,* that the Board had improperly substituted its own factual findings for those of the Hearing Committee. He pointed out that the Committee had heard the witnesses and was in a better position than the Board was to assess their credibility on the issue of causa-

---

6. The Hearing Committee was of the opinion that the principles of *Kersey* may properly be applied to cocaine addiction.

7. One member of the Board recused himself.

8. The Board indicated that it was adopting the Hearing Committee's findings of evidentiary fact but not its findings of "ultimate" fact.

tion. The parties filed their briefs, and oral argument was held on October 19, 1999. On the following day, the court entered an order directing the Board and the parties to submit their views on the underlying issue not resolved in the Board's report, namely, "whether the principles set forth in *Kersey* should be applied to cases of cocaine addiction in general and to this case in particular."

### F. *The Board's Supplemental Report and Recommendation.*

On November 19, 1999, the Board, which was once again unanimous, issued a scholarly, thoughtful, and balanced supplemental report in response to this court's order.[9] The Board summarized its views by stating that

> the principles of *Kersey* should not be applied to cases of cocaine addiction in general and to this case in particular. This is about the least appropriate case we can think of for the extension of *Kersey*—involving as it does "intentional

misappropriation of client funds and dishonesty, fraud, deceit and misrepresentation by a scheme to deceive the Office of Bar Counsel in its investigation through fabricated documents and false statements." [10]

After surveying the authorities from other jurisdictions,[11] and the arguments for [12] and against [13] the extension of *Kersey* principles to disciplinary proceedings against attorneys addicted to cocaine, the Board stated that, in its view,

> the courts rejecting cocaine addiction as a mitigating factor have the better of the argument, as a general proposition, for the reasons stated above. We find the reasons relating to the protection of clients especially compelling. From the standpoint of the victimized client, it makes no difference whether the culpable attorney is addicted to cocaine or not.

The Board took special note of decisions of the Supreme Courts of New Jersey [14] and California [15] rejecting cocaine addiction as

---

9. Both the initial report and the supplemental report were prepared by Daniel Rezneck, Esquire.

10. The language in quotation marks is from the Board's initial Report and Recommendation.

11. The Board stated, accurately in our view, that a slight majority of the courts had rejected cocaine addiction as a mitigating factor and that there was little support in reason or authority for such a defense in cases of misappropriation or comparably serious misconduct.

12. *E.g.*, that cocaine addiction may render an attorney "delusional and out of contact with reality," *In re Winston*, 137 A.D.2d 385, 528 N.Y.S.2d 843, 845 (App. Div. 1st Dep't 1988) (per curiam); that evidence of rehabilitation should serve to mitigate the sanction in order to provide an incentive to addicted attorneys to reform and rehabilitate themselves, *see, e.g., In re Rivkind*, 164 Ariz. 154, 791 P.2d 1037, 1043 (1990) (citing *Kersey* ); that an addict's unlawful possession of cocaine is a less serious offense than distribution of that substance, *id.* at 1042; that cocaine addiction is comparable for disciplinary purposes to

addiction to alcohol; and that *Kersey* principles should therefore be applied.

13. *E.g.*, that the use of and addiction to cocaine increases the danger that an attorney's misconduct poses to the client and to the public at large, *see, e.g., In re Jones*, 252 Kan. 236, 843 P.2d 709, 713 (1992); that the use of cocaine is a criminal act, which the courts should not condone, *see, e.g., In re Stein*, 97 N.J. 550, 483 A.2d 109, 117 (1984); that application of *Kersey* mitigation principles to attorneys who have violated the criminal law by intentionally possessing and using cocaine would undermine public confidence in the legal profession, *see, e.g., People v. Reynolds*, 933 P.2d 1295, 1305 (Colo.1997); and that lengthy periods of probation to monitor the performance of addicted attorneys would be costly and unwieldy, *see, e.g., In re Rentel*, 107 Wash.2d 276, 729 P.2d 615, 621 (1986).

14. *See, e.g., In re Terner*, 120 N.J. 706, 577 A.2d 511, 518 (1990) (per curiam); *In re Hein*, 104 N.J. 297, 516 A.2d 1105, 1108 (1986) (per curiam).

15. *See, e.g., In re Demergian*, 48 Cal.3d 284, 256 Cal.Rptr. 392, 768 P.2d 1069, 1074 (1989); *Rosenthal v. State Bar of California*, 43 Cal.3d 658, 238 Cal.Rptr. 394, 738 P.2d 740, 741 (1987).

a mitigating factor. The Board took pains to emphasize the gravity of Marshall's misconduct. In the Board's view, Marshall's misappropriation and his fabrication of evidence would each ordinarily be sufficient, without more, to require disbarment under our case law. *See, e.g., In re Addams,* 579 A.2d 190, 193 (D.C.1990) (en banc) (misappropriation); *In re Goffe,* 641 A.2d 458, 464–68 (D.C.1994) (per curiam) (fabrication).[16] According to the Board, adoption of Marshall's position

. would mean that a lawyer who commits a criminal act by possessing an illegal drug and steals from his client, even if only to feed his habit, would be better off in the disciplinary system than a lawyer who misappropriates client funds but does not commit the additional illegal act of possessing cocaine. We do not think that our disciplinary system should countenance such a paradox.

Notwithstanding its view that *Kersey* should not be applied to cocaine addiction, the Board recommended that the court avoid an absolutist position:

That does not mean that cocaine addiction is necessarily irrelevant in any and all cases. We can conceive of a situation involving a relatively minor disciplinary offense—not misappropriation of client funds or fabrication of evidence—in which cocaine addiction, its consequences, and a respondent's efforts to deal with it could be relevant. It is not necessary or desirable for this [c]ourt to close the door in every case to consideration of the subject.

For example, we note that even courts rejecting cocaine addiction as a mitigating factor have indicated that recovery from substance abuse, rehabilitation of a respondent, and his or her efforts to help other addicts recover may be proper factors to consider in the mix that goes into fashioning a disciplinary sanc-

tion. [Citations omitted.] We do not think that the [c]ourt should erect a disincentive to recovery or rehabilitation of addicts by adopting too rigid a rule.

Finally, the Board rejected Marshall's contention that refusal by the court, in his case, to mitigate the sanction of disbarment would violate the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* The Board concluded that Marshall was not a "qualified individual with a disability" within the meaning of the ADA and that he had not been subjected to discrimination on account of his disability. The Board stated:

On the basis of the misconduct shown on this record, [Marshall] is not "qualified" to practice law in the District of Columbia. We cannot and do not believe that Congress intended the ADA to be a shield, much less a sword, to be wielded against appropriate discipline of lawyers who break the disciplinary rules. We cannot and do not believe that Congress intended that a lawyer who misappropriates client funds and fabricates evidence to coverup his wrongdoing should be insulated by the ADA from the efforts of the public authorities of the District of Columbia to protect the public from him.

Nor is it plausible in any sense we can comprehend to say that Respondent is being "subjected to discrimination" if disciplined, up to and including disbarment. With respect to the "discrimination" argument, respondent is not being disciplined because he is or was a cocaine addict. He is not being "discriminated" against "by reason of such disability." He is being disciplined because he misappropriated client funds and fabricated evidence. This is not "discrimination" against a cocaine addict. Any lawyer not addicted to cocaine, who did the same thing, would be disciplined in the same way, for the same reasons.

---

**16.** The Board observed that Marshall "attempted to corrupt the administration of justice—specifically the functioning of the disciplinary system—by presenting fabricated evidence and false statements to Bar Counsel to throw the disciplinary inquiry off track.".

Disciplining a lawyer for dishonesty is not "discriminating" against someone for a "disability." No one has yet made the absurd suggestion that dishonesty is itself a "disability" protected by the ADA or any other provision of law.[17]

## II.

## LEGAL DISCUSSION

### A. The standard of review.

Under the applicable rule, this court is required to

adopt the recommended discipline of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.

D.C. Bar R. XI, § 9(g). In the present case, the Board has twice unanimously recommended that Marshall be disbarred. We do not believe that disbarment would tend to foster inconsistent dispositions for comparable conduct,[18] nor do we view disbarment as "unwarranted." We must therefore, at the very least, accord respectful consideration to the Board's views.

We are confronted here, however, with a case of first impression which implicates important issues of law and disciplinary policy. It is the court, and not the Board, which imposes discipline, and we may not abdicate our responsibility to decide the kinds of questions presented in this case by essentially leaving them to the Board. Cf. In re Abrams, 689 A.2d 6, 9 (D.C.) (en banc), cert. denied, 521 U.S. 1121, 117 S.Ct. 2515, 138 L.Ed.2d 1017 (1997). We have therefore been careful to exercise our independent judgment with respect to these issues, and we have not confined our consideration to the question whether the Board's view is a reasonable one. Never-

theless, as we have previously noted, we have found the Board's analysis to be most persuasive and helpful, and we find ourselves in agreement with the Board's major conclusions.

### B. The gravity of Marshall's misconduct.

We agree with the Board that, if Kersey concerns are put to one side, Marshall's conduct as reflected in this record warrants disbarment. There can be no question that Marshall's misappropriation was intentional, and Marshall has suggested no basis, other than Kersey, for concluding that a lesser sanction should be imposed for that violation. See Addams, supra, 579 A.2d at 193.

■ In addition, Marshall's fabrication of evidence and his other misrepresentations to Bar Counsel reflect a complete perversion of the appropriate standards for members of our profession. "Honesty is basic to the practice of law.... A lawyer's word to a colleague at the bar must be the lawyer's bond. A lawyer's representation to the court must be as reliable as a statement under oath." In re Reback, 513 A.2d 226, 231 (D.C.1986) (en banc). Submission of fabricated documents to a disciplinary authority should be "unthinkable" for a lawyer, Goffe, supra, 641 A.2d at 464–68; In re Renfroe, 548 Pa. 101, 695 A.2d 401, 404 (1997) (bribery of witness), and it warrants not only disbarment but also disgrace, shame, and obloquy.

### C. The applicability of Kersey.

Since our decision in Kersey, we have extended the mitigation principles enunciated in that case to an attorney who was addicted to lawfully obtained prescription drugs, see In re Temple, 596 A.2d 585, 586 (D.C.1991); to a lawyer who was suffering

17. The Board noted that its position was consistent with the views of other courts which had considered the applicability of the ADA in similar cases. See pp. [534] – [535], infra.

18. For the reasons stated at pp. [535], infra, we do not believe that cases like this one, in

which the addiction was generated by unlawful conduct, are sufficiently comparable to Kersey and its progeny to implicate the "inconsistent dispositions" provision of § 9(g).

from clinical depression, *see In re Peek,* 565 A.2d 627, 631–32 (D.C.1989); and to a practitioner afflicted with bipolar disorder, *see In re Larsen,* 589 A.2d 400, 400–01 (D.C.1991); *but see In re Appler,* 669 A.2d 731, 741 (D.C.1995) (refusing to apply *Kersey* in disciplinary proceeding against attorney with bipolar disorder who stole more than a million dollars). These cases differ from Marshall's, however, in that the attorney's disability in each of them did not result from criminal conduct on his part. Marshall's addiction, on the other hand, stems from his unlawful possession, use, and abuse of cocaine over a period of several years.

A cocaine habit, once acquired, is not easily cast off:

> Cocaine is a seductive and intensely coercive drug, one of the most powerful pharmacological reinforcers known. Once it has been experienced, the tendency to reuse it is nearly irresistible. . . .
>
> Coke is the only drug laboratory animals prefer to food, water and sex. They will self-administer the drug until they overdose and die, if given free access to it.

LISKA, DRUGS AND THE HUMAN BODY 145 (2d ed.1985); *see also In re Rentel, supra* note 13, 729 P.2d at 619 ("[c]ocaine appears to be the most addicting substance yet known to medical science") (quoting respondent Rentel's psychiatrist). Any humane person would surely feel compassion for those who have become ensnared by the drug to their detriment and, often, to their ruin. *See Hein, supra,* 516 A.2d at 1108.

But notwithstanding cocaine's often all-but-irresistible attraction for those who have allowed themselves to become involved with it, the intentional possession of the drug is unlawful in the District of Columbia, *see* D.C.Code § 33–541(a) (1998), and, indeed, throughout the United States. *See* 21 U.S.C. § 844. Marshall now asks us to mitigate the sanction, for conduct otherwise warranting disbarment, on the basis of a condition which was brought about, at least initially, by his own intentional violation of the law. This would represent a giant step beyond *Kersey*—a step which would tend, in our view, to create perverse incentives and to undermine the rule of law.

We begin with the obvious. "There are valid and rational differences between addiction to [cocaine] and alcohol. . . . Alcohol is legal, although regulated, while [cocaine] is prohibited." *Gorham v. United States,* 339 A.2d 401, 409 (D.C.1975) (en banc) (holding that heroin addict may properly be convicted of possession of a controlled substance). "Each time [Marshall] used cocaine during [a period of several years], he engaged in [criminal conduct punishable by] . . . imprisonment and a . . . fine." *In re Rentel, supra,* 729 P.2d at 620. To apply a mitigation principle previously used only in connection with lawful conduct to a situation involving criminal behavior distorts that principle beyond recognition.

In *In re Terner, supra* note 14, an attorney who was facing discipline for neglect of numerous matters entrusted to him and for other unprofessional conduct asked the court to consider his cocaine addiction in mitigation. The attorney had sought professional help, but he did not do so until after his misconduct had been discovered. The Supreme Court of New Jersey emphatically rejected the attorney's claim:

> [W]e remain committed to the proposition that such addiction is neither a defense to nor a mitigating factor in attorney discipline.
>
> Nor can we ignore the different legal consequences attendant on the abuse of cocaine as distinguished from alcohol. Attorneys who use cocaine or other controlled dangerous substances necessarily violate the law. We would be remiss in condoning such activity, even to the extent of allowing it to ameliorate the penalty in a disciplinary proceeding.

577 A.2d at 519. The court added that an attorney who becomes involved in the

abuse of unlawful drugs "does serious harm to his clients and brings disgrace upon all members of the legal profession. Such conduct evinces a disrespect for the very laws he is sworn to uphold." *Id.* (quoting Special Master's Report).

In *In re Demergian, supra,* the Supreme Court of California disbarred the respondent for misappropriation, rejecting his request for mitigation based on addiction to cocaine and alcohol:

> [C]ocaine use is hardly a mitigating factor. Petitioner became addicted through voluntary use of an illicit drug. (Compare *In re Nadrich* (1988) [citation omitted], [44 Cal.3d 271, 243 Cal.Rptr. 218,] 747 P.2d 1146 (drug addiction resulted from legitimate medical treatment)). Apart from petitioner's subsequent rehabilitative efforts, his use of cocaine increases the danger he presents to the public, the courts, and the reputation of the legal profession. Logically, therefore, it is a factor in *aggravation.*

768 P.2d at 1074 (emphasis in original). In *In re Rivkind, supra* note 12, the Supreme Court of Arizona, in suspending an attorney for two years for abuse of cocaine where the abuse had not affected his clients, stated that "[w]e will deal very sternly with any lawyer who neglects his clients while abusing drugs." 791 P.2d at 1041. Here, Marshall not only neglected Mr. Warrick's interests but misappropriated money and fabricated evidence in order to try to cover up the conversion.

As the Board has correctly pointed out, see p.[534], *supra,* adoption of Marshall's position would place an attorney who has misappropriated client funds and who has also violated the criminal law by abusing cocaine, in a more favorable position, for purposes of professional discipline, than the lawyer who commits a like misappropriation but who has scrupulously complied with the drug laws. We agree with Bar Counsel that

[t]o permit mitigation on grounds of illegal drug use effectively would reward the attorney for illegal conduct occurring after he assumes his professional responsibilities. Such a result would adversely affect the perception of the Bar. Simply stated, people go to jail for conduct that Respondent offers as a mitigating factor. An informed public would find it intolerable that such a lawyer be granted special grace.

Marshall's arguments to the contrary are not persuasive. According to Marshall, "[t]he Board is arguing that Respondent be punished for his misconduct, use of cocaine, rather than to fulfill its duty to recommend [a lesser sanction]." The Board has made it plain, however, that it is recommending discipline because Marshall misappropriated client funds and fabricated documents, and not because he abused an unlawful drug. If Marshall had never used cocaine, the Board's recommendation would have been exactly the same.

The Lawyer Counseling Committee of the District of Columbia Bar (LCC) has filed an amicus brief in which it argues that the illegality of cocaine possession should not be dispositive.[19] The LCC relies in part on Bar Counsel's statement, quoted in *In re Reynolds,* 649 A.2d 818, 819 (D.C.1994) (Farrell, J., concurring), that simple possession of cocaine is not "illegal conduct involving moral turpitude," and also on the dismissal in *Reynolds* of disciplinary charges against an attorney who had violated the terms of his probation in a criminal case by using a controlled substance. According to the LCC, *Reynolds* stands for the proposition that use of an unlawful controlled substance, standing alone, "does not warrant sanctions." The LCC has, however, misapprehended the import of the *Reynolds* decision. As Judge Farrell stated in his concurring opinion in *Reynolds,* which was

---

**19.** The LCC takes no position on the appropriate discipline for Marshall, but urges that, in general, cocaine addiction should be treat-

ed as a mitigating factor in attorney disciplinary proceedings.

joined by Judge Terry and which thus represented the views of a majority of the court, "[b]efore us is no question whether respondent's admitted illegal drug use during probation (which resulted in revocation) is independent grounds for discipline." *Id.* at 819. Moreover, Judges Farrell and Terry were of the opinion that "[i]n future cases, such repeated illegal use of drugs affecting a lawyer's fitness to practice law may well result in discipline without regard to whether it involved 'moral turpitude.'" *Id.* at 820.

Relying on the dissenting opinion in *In re Rentel,* 729 P.2d at 624,[20] the LCC urges that "[w]e should encourage those members of our profession with alcohol and chemical dependencies to overcome their addictions and, accordingly, we should take rehabilitation into consideration when determining the appropriate disciplinary sanction." We do not disagree with the proposition that addicted attorneys should be encouraged to deal with their affliction, and nothing in this opinion suggests that a lawyer with a drug problem who asks for assistance and treatment should be disciplined for his past possession of unlawful drugs alone. We agree with the Supreme Court of New Jersey, however, that an attorney who commits disciplinary offenses warranting disbarment, and then seeks assistance only after he has been apprehended, comes too late with his rehabilitation defense to merit the consideration of the court. *See Terner, supra,* 577 A.2d at 519. Like the respondent in *Terner,* Marshall sought treatment *after* having engaged in the misconduct that brought him down and *after* Bar Counsel initiated an investigation of it.

In sum, we reject Marshall's attempt to invoke the *Kersey* principle, and we hold that, at least where an attorney's misconduct warrants disbarment, addiction to cocaine attributable to the intentional use of that drug does not warrant the imposition of a lesser sanction.[21]

### D. *The ADA.*

Finally, Marshall asserts that the ADA proscribes his disbarment. Substantially for the reasons stated by the Board in its Supplemental Report and Recommendation, see pp. [539 – 540], we find this contention altogether unpersuasive.

To avail himself of the protections of the ADA, Marshall must show that he is a "qualified individual with a disability." 42 U.S.C. § 12132. This term is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices ... or the provisions of auxiliary aids and services, meets the essential eligibility requirements for ... participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). "The Bar is a noble calling," *see In re Shillaire,* 549 A.2d 336, 337 (D.C.1988), and a lawyer who has misappropriated client funds and submitted fabricated documents to Bar Counsel does not "meet the essential eligibility requirements of membership" in our profession. "[Marshall] is not 'qualified' to be a member of the Bar because he committed serious misconduct and no 'reasonable modifications' are possible." *The Florida Bar v. Clement,* 662 So.2d 690, 700 (Fla.1995); *accord, People v. Reynolds, supra* note 13, 933 P.2d at 1305; *State Bar Ass'n v. Busch,* 919 P.2d 1114, 1116–18 (Okla.1996).

**20.** In *Rentel,* the Supreme Court of Washington held that notwithstanding its recognition of alcoholism as a mitigating factor in some cases, the respondent's cocaine addiction did not protect him from disbarment because, *inter alia,* "[t]he use of alcohol is legal; the use of cocaine is not." 729 P.2d at 620.

**21.** As suggested by the Board, see p. [540], *supra,* we do not foreclose the possibility that a respondent's efforts to rehabilitate himself from addiction to unlawful drugs, and conceivably even the addiction itself, might be relevant with respect to some minor disciplinary cases. We leave any such issues to another day. A respondent's progress towards rehabilitation would, of course, be logically relevant to his proof of fitness in a reinstatement proceeding.

To paraphrase and adapt to this case the reasoning of the Supreme Court of Colorado in *People v. Reynolds*, "we see no reasonable accommodation which can be made with regard to Respondent's [misappropriation of client funds and fabrication of documents] which would accomplish the purpose of maintaining the integrity of the Bar and promoting the public's confidence in the [District's] many attorneys." 933 P.2d at 1305 (internal quotation marks omitted).

■ Moreover, Marshall's disbarment does not constitute discrimination based on his disability. In *Despears v. Milwaukee County*, 63 F.3d 635 (7th Cir.1995), an alcoholic employee's driver's license was revoked after he had been convicted for the fourth time of driving under the influence of alcohol. His position required an operator's license, and he was demoted. The court, in an opinion by Judge Posner, held that his demotion did not violate the ADA:

> [R]efusal to . . . alleviate the punishment of the disabled person who commits a crime under the influence . . . is not discrimination against the disabled; it is a refusal to discriminate in their favor. It is true that the [ADA] . . . require[s] the employer to make a reasonable accommodation of an employee's disability, but we do not think it is a reasonably required accommodation to overlook infractions of law.

*Id.* at 637; *accord, Maddox v. Univ. of Tennessee*, 62 F.3d 843, 848 (6th Cir.1995) ("employers subject to the . . . ADA must be permitted to take appropriate action with respect to an employee on account of egregious or criminal conduct, regardless of whether the employee is disabled. . . . We believe that it strains logic to conclude that [an employee's wrongdoing] could be protected under [the ADA] merely because the actor has been diagnosed as an alcoholic and claims ·that [his misconduct] was caused by his disability."). Marshall committed disciplinary offenses which also constitute criminal conduct, and the reasoning of the courts in *Despears* and *Maddox* applies with full force to this case.

## III.

## CONCLUSION

■ "[T]he purposes of attorney discipline are to protect the public and to preserve confidence in the legal system." *In re Rentel, supra,* 729 P.2d at 618 (referring to *ABA Standards for Imposing Lawyer Sanctions* at 23 (1986)); *see also In re Reback, supra,* 513 A.2d at 231; *In re Steele,* 630 A.2d 196, 200 (D.C.1993). "This [c]ourt has a constitutional duty in overseeing the Bar to insure that its members are fit to practice." *People v. Reynolds, supra* note 13, 933 P.2d at 1305 (quoting *Busch, supra,* 919 P.2d at 1119). Marshall·does not meet this standard. We agree with Bar Counsel that "abuse of illegal drugs as a basis for leniency after a proven ethical violation [requiring disbarment] is intolerable." Accordingly, Matthew J. Marshall, Jr. is hereby disbarred.[22]

*So ordered.*[23]

WAGNER, Chief Judge, dissenting:

The court holds that where an attorney's misconduct would warrant disbarment, addiction to cocaine attributable to the inten-

---

**22.** We direct Mr. Marshall's attention to the requirements of D.C.Bar. R. XI, § 14.

**23.** On June 17, 1997, Marshall, who was never admitted to practice in Maryland, was disbarred by consent in that jurisdiction after having falsely represented to a Maryland court that he was a member of the Maryland Bar. The order of disbarment directed that Marshall's name be placed on a list "of non-admitted attorneys who are excluded from exercising in any manner the privilege of practicing law in this State." Upon being advised of Marshall's disbarment, this court directed the Board to recommend whether reciprocal discipline should be imposed.

The Board, having recommended that Marshall be disbarred for his District of Columbia violations, suggests that the reciprocal proceeding be dismissed as moot. In light of our decision to disbar Marshall, we also adopt the Board's recommendation with respect to the reciprocal matter.

tional use of that drug can not be used as a mitigating factor in determining sanction. This rule has some appeal because it is somewhat simple to apply and strongly condemns the criminal conduct in which an addict necessarily engages in order to obtain controlled substances to feed his addiction.[1] However, as the Board on Professional Responsibility (BPR) points out, A[i]t is not necessary or desirable for this Court to close the door in every case to consideration of the subject. "In spite of the majority's effort to reserve the possibility of considering in mitigation of sanction a lawyer's Aefforts to rehabilitate himself from addiction to unlawful drugs, and conceivably even the addiction itself," [2] the rationale underlying the court's rejection of mitigation in this case applies in every case of addiction to illegal drugs, and therefore would seem to foreclose that possibility. In virtually all, if not all, instances a person addicted to controlled substances necessarily engages in illegal conduct to acquire the drugs while a member of the profession.[3] In addition, drawing the line at "intentional use," as the court does here, also nets virtually every case, accepting the rationale relied upon by the majority that, "at some point in time, while the choice [is] still his, [an addict chooses] the path which ultimately [leads] to his cocaine addiction." *See In re Rentel,* 107 Wash.2d 276, 729 P.2d 615, 621 (1986).

The issue raised by the BPR and the Lawyers Counseling Committee of the District of Columbia Bar (LCC) is not whether sanctions should be eliminated where a lawyer's misconduct is caused by his or her addiction to illegal substances, but whether the presumed sanction should be, and can be, tempered under the circumstances while maintaining the integrity of the profession and protecting the public from unethical or incompetent lawyers. Using a more flexible approach in addressing this complex issue, other jurisdictions seem to manage to do so. *See, e.g., In re Phillips,* 260 Kan. 909, 925 P.2d 435 (1996); *The Florida Bar v. Marcus,* 616 So.2d 975 (Fla.1993); *In re Rivkind,* 164 Ariz. 154, 791 P.2d 1037 (1990); *People v. Geller,* 753 P.2d 235 (Colo.1988); *In re Winston,* 137 A.D.2d 385, 528 N.Y.S.2d 843 (App. Div. 1st Dep't 1988) (per curiam). In *Marcus,* for example, in lieu of disbarment, the Florida Supreme Court imposed a three year suspension, followed by three years of probation with drug testing, as a sanction for an attorney's misappropriation of client funds causally linked to his narcotic addiction. 616 So.2d at 978. The court considered in mitigation that Marcus' period of addiction was of short duration; that he had remained drug free for almost six years; that he recognized the need for treatment and promptly obtained it; that he took a role in helping other addicts; and that he made restitution. *Id.* The court further explained that:

> [t]he misappropriation of a client's funds "is one of the most serious offenses that a lawyer can commit" and, "absent sufficient mitigating factors, compels the extreme sanction of disbarment." ... In this case we find that the mitigating factors of cocaine addiction, successful rehabilitation, the lengthy delay in resolving the matter, and the previous consent judgment warrant the imposition of less than the presumed discipline of disbarment.

*Id.* (internal citation omitted). Similar considerations guided the determinations in each of the cases cited above, resulting

---

1. Although the question was not then before the court, a majority in *In re Reynolds,* 649 A.2d 818 (D.C.1994), suggested that under D.C. Bar R. 8.4(b), "repeated illegal use of drugs affecting a lawyer's fitness to practice law may well result in discipline without regard to whether it involved 'moral turpitude.'" 649 A.2d at 820.

2. See majority opinion at n. 21.

3. The opinion expresses agreement with Bar Counsel that "[t]o permit mitigation on grounds of illegal drug use effectively would reward the attorney for illegal conduct occurring after he assumes his professional responsibilities.... Simply stated, people go to jail for conduct that Respondent offers as a mitigating factor." See majority opinion at ——.

in less severe sanctions than might be otherwise indicated, with strict treatment and monitoring conditions, as briefly summarized in the margin.[4] Nevertheless, in imposing sanctions, these courts have still addressed the goals of the disciplinary system of protecting the public, deterring other attorneys from similar misconduct, and protecting public and private rights. *See In re Appler*, 669 A.2d 731, 738 (D.C.1995). The hard and fast rule which the majority adopts would eliminate consideration of the type of factors identified in *Marcus, supra*, which might support the imposition of a sanction of suspension instead of disbarment followed by a lengthy probationary period with conditions established to assure rehabilitation. In my opinion, the courts of Arizona, Colorado, Florida, Kansas and New York have the more enlightened approach to addressing this complex issue, while protecting the goals of the disciplinary system. For these reasons, I respectfully dissent from the opinion of the court, and I would remand to the BPR for additional evidence and a determination of whether Marshall can show that he is substantially rehabilitated.[5] *See In re Stanback*, 681 A.2d 1109 (D.C.1996); *In re Kersey*, 520 A.2d 321 (D.C.1987).

---

4. *See Rivkind, supra*, 791 P.2d at 1041 (two year suspension and probation for two years with random drug testing, practice and sobriety monitors, and attendance at Narcotics Anonymous and Alcoholics Anonymous as the sanction for felony conviction for attempted possession of cocaine); *Geller, supra*, 753 P.2d at 237–38 (where pattern of misconduct related to cocaine use—*nolo contendere* plea to unlawful use of controlled substance and other disciplinary violations related to failure to appear and advise client, and deposit of client funds—sanction mitigated, and three year suspension imposed with requirement of demonstrating mental stability, rehabilitation, and fitness to practice upon application for reinstatement); *Winston, supra*, 528 N.Y.S.2d at 845 (where cocaine-induced mental illness caused attorney's misconduct, including conversion of escrow deposit, sanction mitigated to sus-

pension for three years with reinstatement conditioned upon demonstrated continued rehabilitation and medical reports attesting to mental and physical capability of resuming practice); *Phillips, supra*, 925 P.2d at 438–39 (mental disability and drug dependency considered in mitigation of sanction for multiple disciplinary violations, and respondent given three years supervised probation with conditions of drug testing and treatment and strict practice monitoring).

5. The BPR denied Marshall's post-hearing motion to present additional evidence of rehabilitation because it concluded that even if the *Kersey* rule applied, Marshall had failed to show that his legally cognizable disability caused his misconduct. I agree with the Hearing Committee that causation was adequately established.