MARTIN, Circuit Judge,
dissenting:
Nearly forty-five years ago, the Supreme Court warned: “[w]ith faithfulness to the constitutional union of the States, we cannot leave to the States the formulation of the authoritative laws, rules, and *1382 remedies designed to protect people from infractions by the States of federally guaranteed rights.” Chapman v. California, 386 U.S. 18, 21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1967). I fully join in Judge Barkett’s well-reasoned dissent, and I write separately only to emphasize the ways in which I believe the majority has run afoul of Chapman’s venerable admonition.
As the Supreme Court did in Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), with regard to the constitutional ban against executing the insane, in Atkins it left “to the State[s] the task of developing appropriate ways to enforce the constitutional restrictions upon” executing the mentally retarded.[1] Atkins v. Virginia, 536 U.S. 304, 317, 122 S.Ct. 2242, 2250, 153 L.Ed.2d 335 (2002) (quoting Ford, 477 U.S. at 416-417, 106 S.Ct. at 2605 (plurality opinion)). But as Panetti v. Quarterman, 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), makes plain, even under AEPDA deference, the fact that States have leeway to enforce Ford’s substantive restrictions does not mean that they are free to adopt any procedures they choose to enforce federal constitutional rights. See id. at 952-54, 127 S.Ct. at 2858-59. Rather, as Panetti illustrates, once a substantive federal right is established, the State must provide adequate procedures for protecting that right. Id. at 952, 127 S.Ct. at 2858. Atkins, like Ford, commands States to develop only “appropriate” procedures to “enforce” the Eighth Amendment right at issue. Atkins, 536 U.S. at 317, 122 S.Ct. at 2250.
Panetti in turn instructs us how to measure this “appropriateness” under AEDPA review. Indeed, Panetti is instructive for Mr. Hill’s case in many ways.[2] First, it confirms that rights guaranteed under the Eighth Amendment must be protected by procedures which comport with “basic requirements” of Due Process. Panetti, 551 U.S. at 949-50, 127 S.Ct. at 2856 (quoting Ford, All U.S. at 427, 106 S.Ct. at 2610) (Powell, J., concurring in part and concurring in the judgment). Of course, Due Process under the Fourteenth Amendment is only one clearly established measure of the adequacy of Georgia’s mental retardation procedures. The substantive right recognized in Atkins is different in kind, and arguably more important in a *1383 Due Process sense, than the substantive right recognized in Ford.[3] Justice Powell pointed out in Ford that the question of whether an inmate who has already been convicted is competent to be executed is quite different from that of whether he is eligible to be sentenced to death in the first place. He said it this way: “the only question raised [by incompetency to be executed] is not whether, but when, [an] execution may take place. This question is important, but it is not comparable to the antecedent question whether petitioner should be executed at all.” Ford, 477 U.S. at 425, 106 S.Ct. at 2610 (Powell, J., concurring in part and concurring in the judgment). Based on this distinction, Justice Powell concluded that the Supreme Court’s “decisions imposing heightened procedural requirements on capital trials and sentencing proceedings — e.g., Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion); Turner v. Murray, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986) — do not apply in [the determination of insanity at time of execution] context.” Id. But even with this view, Justice Powell joined that portion of Ford which recognized that “the Eighth Amendment has been recognized to affect significantly both the procedural and the substantive aspects of the death penalty.” Id. at 405, 106 S.Ct. at 2599 (majority opinion).
Atkins is an Eighth Amendment decision about whether, not when, a person may be executed. Thus, the determination of whether a capital defendant is mentally retarded as a predicate to imposing a death sentence “calls for no less stringent standards than those demanded in any other aspect of a capital proceeding.” Ford, 477 U.S. at 411-12, 106 S.Ct. at 2603 (plurality opinion). This means Georgia’s mental retardation procedures must meet not only Due Process requirements, but also the Supreme Court’s clearly established Eighth Amendment principles demanding more reliability and accuracy in capital proceedings.
Second, like Hill, Panetti involves a substantive Eighth Amendment prohibition against carrying out a sentence of death against a certain class of prisoners — the mentally retarded in Hill and the insane in Panetti. Third, in both cases AEDPA bars federal habeas corpus relief unless the state court decision is contrary to, or involves an unreasonable application of, *1384 clearly established federal law. See 28 U.S.C. § 2254(d)(1). Fourth, both Hill and Panetti involve Eighth Amendment prohibitions for which the States were expressly given “the task of developing appropriate ways to enforce the constitutional restrictions.” Atkins, 536 U.S. at 317, 122 S.Ct. at 2250 (quoting Ford, 477 U.S. at 416-17,106 S.Ct. at 2605 (plurality opinion)). Finally, the question decided in Panetti is strikingly similar to the question presented by Hill: whether the procedures provided by the state court were adequate to protect the constitutional right — specifically, the right not to be executed if insane at the time of execution in Ford and the right of the mentally retarded not to be executed in Hill.
In light of the similarity of Mr. Hill’s case to Panetti, I cannot agree with the majority’s conclusion that AEDPA’s deference standard precludes us from finding that Georgia’s beyond a reasonable doubt standard is not contrary to or an unreasonable application of clearly established Supreme Court precedent. Just because Atkins, like Ford, announced a general standard does not mean that Georgia’s application of Atkins to Mr. Hill cannot be contrary to, or involve an unreasonable application of, Atkins’s constitutional restriction against executing mentally retarded defendants. On this issue, Panetti is clear:
That the [Ford] standard is stated in general terms does not mean the application was reasonable. AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced. The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner.
Panetti 551 U.S. at 953, 127 S.Ct. at 2858 (citations and quotation marks omitted). As the Supreme Court did in Panetti I would hold here that “the factfinding procedures upon which the [state] court relied were not adequate for reaching reasonably correct results, or, at a minimum, resulted in a process that appeared to be seriously inadequate for the ascertainment of the truth” of whether a defendant is eligible to be executed. Id. at 954, 127 S.Ct. at 2859 (citation and quotation marks omitted). For all the reasons set forth by Judge Barkett, and because the Eighth Amendment demands heightened reliability and accuracy, I conclude that this standard has plainly been violated in Mr. Hill’s case.
This is so because the beyond a reasonable doubt standard for proving mental retardation is fundamentally at odds with the basis for the holding in Atkins. As detailed in Judge Barkett’s opinion, the state habeas trial court, after an extensive evidentiary hearing concerning mental retardation, has already determined that Mr. Hill is more likely than not mentally retarded, yet he cannot prove beyond a reasonable doubt that he is mentally retarded. Executing an inmate fitting this description does not serve the penological purposes of the death penalty identified in Atkins itself: deterrence and retribution. Atkins, 536 U.S. at 318-20, 122 S.Ct. at 2251. Atkins instructs that because the mentally retarded are less morally culpable, and because our Eighth Amendment jurisprudence “seeks to ensure that only the most deserving of execution are put to death, an exclusion for the mentally retarded is appropriate.” Id. at 319, 122 S.Ct. at 2251. Atkins also plainly tells us that “executing the mentally retarded will not measurably further the goal of deterrence.” Id. at 320, 122 S.Ct. at 2251. *1385 Thus executing Mr. Hill, who has already demonstrated that he is mentally retarded and therefore less morally culpable because of his “cognitive and behavioral impairments,” id. at 320, 122 S.Ct. at 2251, is contrary to Atkins insofar as it will not “measurably further the goal[s] of deterrence” or retribution. Id.
To conclude, Georgia’s beyond a reasonable doubt standard of proof is contrary to the Supreme Court’s longstanding recognition that death is different, and for that reason requires heightened reliability in the determinations underlying capital punishment. Specifically, the Supreme Court has clearly established that “the Eighth Amendment requires a greater degree of accuracy ... than would be true in a non-capital case.” Gilmore v. Taylor, 508 U.S. 333, 342, 113 S.Ct. 2112, 2117, 124 L.Ed.2d 306 (1993) (citation omitted).[4] Because this principle ranks as “fundamental enough” to the Supreme Court’s post-Fwman[5] Eighth Amendment death penalty jurisprudence, the necessity to apply these principles to Georgia’s beyond a reasonable doubt standard is clear. See Yarborough v. Alvarado, 541 U.S. 652, 666, 124 S.Ct. 2140, 2151, 158 L.Ed.2d 938 (2004) (“Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.”). But, by contrast, Georgia’s requirement that a capital defendant prove his mental retardation beyond a reasonable doubt “would seem inevitably to enhance the risk of unwarranted” imposition of the death sentence upon those who are mentally retarded. Cf. Beck v. Alabama, 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980) (reversing death sentence imposed after a jury verdict of guilt of a capital offense when the jury was not permitted to consider a verdict of guilt of a lesser included offense). Since Mr. Hill has already satisfied the state trial court that he is mentally retarded by a preponderance of the evidence, we should assume that “some characteristics of [Mr. Hill’s] mental retardation undermine the procedural protections that our capital jurisprudence steadfastly guards.” See Atkins, 536 U.S. at 317, 122 S.Ct. at 2250. “Such a risk cannot be tolerated in a case in which the defendant’s life is at stake.” Beck, 447 U.S. at 637, 100 S.Ct. at 2389.
While federal habeas courts must accord state court decision substantial deference under AEDPA, we must be vigilant to “guard against extreme malfunctions in the state criminal justice systems.” Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (quotation omitted). In my judgement, execution of a person who has already proven he is more likely than not mentally retarded, but who is unable to prove his mental retardation beyond a reasonable doubt, is an “extreme malfunction” that warrants the protection of the Great Writ.
*1386 For all of these reasons, as well as those expressed by Judge Barkett, I respectfully dissent from the majority opinion.

. The majority is quite right that Georgia was the first state to ban execution of the mentally retarded. However, this fact sheds little light on the Eighth Amendment issue we undertake to decide here. In Ford itself, the State of Florida had a pre-existing ban on executing the insane. See Ford, All U.S. at 403, 106 S.Ct. at 2598 (referring to Fla. Stat. § 922.07 (1985) (proceedings when person under sentence of death appears to be insane)); see also Goode v. Wainwright, 448 So.2d 999, 1001-02 (Fla.1984) (holding that an "insane person cannot be executed,” but that Florida's statutory procedure embodied in Fla. Stat. § 922.07 does not violate due process). Yet, the Supreme Court found those procedures inadequate to enforce the Eighth Amendment right at issue. Ford, All U.S. at 416-17, 106 S.Ct. at 2605 (plurality opinion); id. at 425-27, 106 S.Ct. at 2609-10 (Powell, J., concurring in part and concurring in the judgment).

. By saying Panetti is instructive to Mr. Hill's case, I do not mean to suggest that Panetti itself provides the source of "clearly established” federal law by which Georgia’s standard of proof must be measured. Panetti is relevant for a different reason. It illustrates how even a general constitutional standard may be applied in an unreasonable manner under AEDPA's deference standard. See Panetti, 551 U.S. at 953, 127 S.Ct. at 2858. This is a principle of statutory construction concerning the interpretation and application of AEDPA itself. Thus, the fact that Panetti did not involve mental retardation, a standard of proof, or was decided after Head v. Hill, 277 Ga. 255, 587 S.E.2d 613 (2003) {Hill III), does not detract from the lesson it provides here.

. Judge Posner recognized in a different context,
A state, although limited in its right under the Constitution to put to death or even on trial a person who is mentally incompetent, Ford, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); Medina v. California, 505 U.S. 437, 451-53, 112 S.Ct. 2572, 2581, 120 L.Ed.2d 353 (1992), is not constitutionally obligated to recognize a defense of insanity-several states have abolished the defense ...
Despears v. Milwaukee County, 63 F.3d 635, 637 (7th Cir. 1995) (parallel citations omitted). There is a critical distinction between the Due Process required to protect substantive rights derived from the United States Constitution on the one hand, see Cooper v. Oklahoma, 517 U.S. 348, 355-56, 116 S.Ct. 1373, 1377, 134 L.Ed.2d 498 (1996) (holding that state law presuming criminal defendant is competent to stand trial unless he proves incompetence by clear and convincing evidence violates Due Process), and state created rights on the other, see Leland v. Oregon, 343 U.S. 790, 799, 72 S.Ct. 1002, 1007-08, 96 L.Ed. 1302 (1952) (holding state law requiring defendant to prove state created insanity defense beyond a reasonable doubt does not violate Due Process). Given this important distinction, which was well established at the time Hill III was decided, and the reasoning and authorities discussed in Judge Barkett's dissent, I cannot agree with the majority's conclusion that either Leland or Ford "lend enough support” to the Georgia Supreme Court's decision to make it consistent with, or a reasonable application of, clearly established Supreme Court precedent.

. See also Gardner v. Florida, 430 U.S. 349, 357, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (plurality opinion) ("[Djeath is a different kind of punishment from any other which may be imposed in this country.”); Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (explaining rationale for requiring more reliable procedures in capital sentencing determinations to minimize the "risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty”); Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (plurality opinion) ("Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.”).

. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).